UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Cause No. 1:11-cv-736-WTL-DKL ) |
| MIROWSKI FAMILY VENTURES, LLC, | ) ) |
| Defendant. | ) ) |

## ENTRY ON MOTIONS FOR SUMMARY JUDGMENT

Before the Court are the parties' cross-motions for summary judgment (dkt. nos. 123, 126). The motions are fully briefed, and the Court, being duly advised, now rules as follows.[1]

### I.  STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, the Court accepts as true the admissible evidence presented by the non-moving party and draws all reasonable inferences in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party

---

[1] Mirowski's motion for oral argument regarding its motion for summary judgment (dkt. no. 130) is **DENIED**.

1

bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

The fact that the parties have filed cross-motions for summary judgment does not alter the standard set forth in Federal Rule of Civil Procedure 56. When evaluating each side's motion, the Court simply "construe[s] all inferences in favor of the party against whom the motion under consideration is made." *Metro Life. Ins. Co. v. Johnson,* 297 F.3d 558, 561-62 (7th Cir. 2002) (quoting *Hendricks–Robinson v. Excel Corp.,* 154 F.3d 685, 692 (7th Cir. 1998)).

## II.  BACKGROUND

At the heart of this unwieldy dispute lies a lifesaving medical device that is smaller than a deck of cards – an "implantable cardioverter defibrillator" or ICD.[2] The first successful ICDs were developed and patented in the late 1960s and early 1970s by a team led by Dr. Mieczyslaw Mirowski, a cardiologist. Dr. Mirowski and his team later obtained a number of additional patents for improvements on the basic device. Defendant Mirowski Family Ventures, LLC, (hereinafter "Mirowski") is now owner of the patents at issue.[3]

Context is best given to the dispute by a quick overview. Mirowski and its exclusive licensee Plaintiff Boston Scientific Corporation sued St. Jude Medical, Inc., for infringement of

---

[2] An ICD "is implanted in a patient's chest or abdomen with electrical leads that run to the patient's heart. An ICD can sense dangerous cardiac arrhythmias and can administer electrical therapy immediately, first with mild 'pacing' shocks and, if necessary, with powerful defibrillating shocks that can save the life of a patient experiencing ventricular fibrillation." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 2002 WL 1801525 at *1 (S.D. Ind. 2002).

[3] In 2001, Dr. Mirowski's widow, Anna Mirowski, became owner of the patents. In March 2005, Plaintiff Mirowski Family Ventures succeeded Anna Mirowski as owner after Mrs. Mirowski passed away.

certain ICD patents.[4] Things did not go smoothly. Now, Mirowski asserts claims against Boston Scientific for actions it took during and after the St. Jude litigation that it argues breached certain of its agreements with Boston Scientific. First, Mirowski argues that Boston Scientific has breached its agreement to pay royalties on ICD products it sold. Second, Mirowski argues that Boston Scientific breached another of the parties' agreements when it settled portions of its claims with St. Jude without Mirowski's knowledge and approval.

Now for the details. In 1973, Dr. Mirowski granted an exclusive license of patents relating to the ICD to Medrad, Inc. The 1973 License required the licensee to pay Dr. Mirowski, among other things: "Three percent (3%) of the net sales, rental and lease by [the licensee] of Implantable Defibrillators, their parts and components covered under patent rights." The 1973 License defines "net sales, rental or lease" as "the total aggregate selling price received by [the licensee] for the initial sale of a device, its parts or components, and the total aggregate rental or lease price received by [the licensee] for a device, its parts or components after the deduction of all discounts, sales, use and similar taxes, and delivery costs." In addition, with respect to infringement actions, the 1973 License Agreement provided:

> MEDRAD shall have the right to bring and conduct suit or actions in its name against others for infringement of any patent subject to this Exclusive License Agreement, the same as if such patent were the exclusive property of MEDRAD; and MEDRAD shall have the obligation, subject to mutual agreement between MEDRAD and MIROWSKI [sic] to bring and conduct suit or actions against any infringer whose annual sales, rentals and leases of infringing devices exceed $75,000. MIROWSKI agrees to join as a party plaintiff in any infringement suit or action brought by MEDRAD under the terms of this Exclusive License Agreement; and MIROWSKI shall have the right to participate in any infringement suit or action brought by MEDRAD under the terms of this Exclusive License Agreement. MEDRAD shall pay all costs and expenses of such

---

[4] At the time of suit, Plaintiff Guidant was Mirowski's exclusive licensee. As of 2006, co-plaintiffs Guidant LLC, Guidant Sales, LLC, and Cardiac Pacemakers, Inc., are wholly-owned subsidiaries of Plaintiff Boston Scientific Corporation. The Plaintiffs are referred to collectively as "Boston Scientific."

>suit or action, and shall be entitled to the proceeds thereof. However, the proceeds of such suit or action, less all costs and expenses incurred by MEDRAD in connection therewith, shall be divided equally between MEDRAD and MIROWSKI.

Guidant eventually acquired the license from Medrad. In 1996, pursuant to the 1973 License, Mirowski and Guidant (and later Boston Scientific) sued St. Jude Medical, Inc., ("St. Jude") for infringement of two Mirowski patents – the '288 patent and the '472 patent[5] – in Indiana ("the Indiana Litigation"). In 2001, a jury found that St. Jude infringed the '472 patent and jointly awarded Guidant and Mirowski $140 million in damages, including a $110 million up-front payment for entry into the ICD market and ongoing royalties of $30 million. In addition, the jury found no infringement of the two claims of the '288 patent at issue and declined to award lost profits on the '472 patent. However, on February 13, 2002, the court entered judgment as a matter of law for St. Jude on both patents and conditionally granted a new trial for St. Jude as to most issues on which it did not prevail at trial. Among other things, the court found the '288 and '472 patents invalid, the '472 not infringed, ordered Guidant to pay St. Jude a sanction of $300,000 for misconduct related to a Guidant expert witness, and ordered Guidant to pay St. Jude's costs, including attorneys' fees, if a retrial became necessary.

Following this ruling, in April 2002, Guidant attorneys advised Mirowski that they were ceasing payment of royalties to Mirowski, citing Article III, Section 3 of the 1973 License, which provided that royalties were "payable only on devices which are covered . . . by one or more valid claims of a patent application or of an unexpired patent included in the Patent

---

[5] "The '472 patent claims a device and accompanying method for which the energy levels for electrical shocks can be programmed externally, after the device has been implanted in a patient. The '288 patent claims a device and accompanying method that can be programmed for what is called 'multimode' operation, meaning that the device can respond to an arrhythmia with one type of electrical therapy and then, if the first therapy is not successful, can proceed automatically to administer other types or modes of electrical therapy." *Cardiac Pacemakers*, 2002 WL 1801525 at *1.

Rights." Because the relevant claims of the '288 patent had been declared invalid by the court, Guidant took the position that it was no longer required to pay royalties. Mirowski disagreed with Guidant's interpretation and a dispute arose between the parties as to whether Guidant was still required to pay royalties. As discussed below, that dispute would be formally addressed by the parties in 2004.

In the meantime, Mirowski and Guidant appealed the district court's invalidity decision as to the '288 patent, which consisted of a method claim (claim 4) and an apparatus claim (claim 13); the '472 rulings were not appealed. However, Mirowski and Guidant jointly made the strategic decision to appeal only the district court's claim construction of method claim 4 of the '288 patent. In the event that the Federal Circuit reversed the district court's invalidity ruling, this decision left the jury's underlying verdict as to noninfringement of apparatus claim 13 of the '288 patent untouched. Thus, as of November 2002, when Guidant and Mirowski filed their appellate brief, Guidant and Mirowski knew that only a method claim remained at issue.

In January 2004, while the appeal regarding method claim 4 of the '288 patent was pending, Mirowski and Guidant met to negotiate a new license and resolve existing disputes between Mirowski and Guidant. On January 28, 2004, Guidant and Mirowski entered into a two-page agreement (the "2004 Agreement"). Guidant promised to pay Mirowski royalties under the following conditions:

> In the event there is in the [Indiana Litigation] a final non-appealable judgment that St. Jude infringes a valid claim of the '288 Patent and that the '288 Patent is properly subject to the previously granted patent term extension, GUIDANT will pay to MIROWSKI a sum equal to all royalties that accrued pursuant to the License Agreement[6] on products covered by any such claims of the '288 Patent from the date such royalty payments were suspended to the date of expiration of the '288 Patent together with interest at the prime rate as published in the Wall Street Journal as compounded quarterly from the date payment is due to the date

---

[6] The "License Agreement" in this passage refers to the 1973 License.

5

of payment. Such payment will be made by GUIDANT within ninety (90) days after such decision becomes final and not subject to further appeal.

The 2004 Agreement further specified that if Guidant and Mirowski did not prevail on appeal, Guidant would pay Mirowski $15 million:

In the event that there is in the Litigation a final non-appealable judgment that St. Jude does not infringe the '288 Patent (whether by non-infringement or because an invalid claim cannot be infringed), GUIDANT will pay to MIROWSKI fifteen million dollars ($15,000,000) within ninety (90) days after such decision becomes final and not subject to further appeal.

This $15 million payment was consideration for Mirowski executing a release that provided:

MIROWSKI . . . releases and forever discharges GUIDANT, its present subsidiaries, directors, officers, employees, successors, assigns, and transferees (collectively, the "Guidant Parties") from any and all causes of action, claims and demands whatsoever in law or in equity that any Mirowski Party has, had or may have against any Guidant Party, based on or arising from the [Indiana Litigation] or from any non-payment of royalties under patents in the [Indiana Litigation].

Also on January 28, 2004, the parties amended and restated their license agreement (the "2004 License"). With respect to infringement actions, the restated license provided:

GUIDANT shall have the right to bring and conduct suit or actions in its name against others for infringement of any patent subject to this Exclusive License Agreement, the same as if such patent were the exclusive property of GUIDANT; and GUIDANT shall, subject to mutual agreement between GUIDANT and MIROWSKI, bring and conduct suit or actions against any infringer whose annual sales, rentals and leases of infringing devices exceed $75,000. MIROWSKI agrees to join as a party plaintiff in any infringement suit or action brought by GUIDANT under the terms of this Exclusive License Agreement; and MIROWSKI shall have the right to participate in any infringement suit or action brought by GUIDANT under the terms of this Exclusive License Agreement. GUIDANT shall pay all costs and expenses of such suit or action, and shall be entitled to the proceeds thereof. However, the proceeds of such suit or action, less all costs and expenses incurred by GUIDANT in connection therewith, shall be divided equally between GUIDANT and MIROWSKI.

While the Indiana Litigation was going on, Mirowski and Guidant were also co-plaintiffs against St. Jude in a suit in Delaware (the "Delaware Litigation"), which involved a different patent owned by Mirowski.

6

Defendant Boston Scientific acquired Guidant in April 2006. A few months later, on July 29, 2006, Boston Scientific and St. Jude executed a complete settlement of four cases and partial settlement of two others pending between Boston Scientific and St. Jude. Those cases included the Indiana Litigation and the Delaware Litigation involving the Mirowski patents. As part of the settlement, Boston Scientific withdrew its damages claim for, among other things, lost profits, price erosion, an "up-front" royalty payment, prejudgment interest, and attorneys' fees in the Indiana Litigation and withdrew its damages claim for, among other things, lost profits, price erosion, an "up-front" royalty payment, enhanced damages (i.e., treble damages and/or attorneys' fees) and prejudgment interest in the Delaware Litigation. Although Boston Scientific's Chief Patent Counsel testified in his deposition that Boston Scientific decided not to include Mirowski in the settlement negotiations with St. Jude, on June 15, 2006, Boston Scientific informed Mirowski's counsel, Mr. Sidney Silver, that Boston Scientific was engaged in settlement negotiations with St. Jude. Mr. Silver believed— based on representations from Boston Scientific and St. Jude—that the window during which settlement negotiations were to take place closed on June 30, 2006; if there were no settlement by that date, the talks would end. Boston Scientific did not communicate with Mirowski about the July 2006 settlement discussions or the settlement until after it was signed.

Thereafter Mirowski agreed to the terms of the agreement between Boston Scientific and St. Jude in both the Indiana and Delaware Litigations. However, Mirowski and Boston Scientific entered into a Reservation of Rights Agreement preserving Mirowski's claims against Boston Scientific for breach of contract and/or breach of the 2004 License relating to the settlement.

The "final non-appealable judgment" contemplated by the 2004 Agreement royalty payment provision occurred on January 11, 2010. *See Cardiac Pacemakers, Inc. v. St. Jude*

*Med., Inc.*, 483 F.Supp.2d 734 (S.D. Ind. 2007) (granting summary judgment in favor of St. Jude on ground of patent invalidity and alternatively granting Boston Scientific's motion for summary judgment on ground that St. Jude's accused devices infringe claim 4), *rev'd in part*, *Cardiac Pacemakers v. St. Jude Med., Inc.*, 576 F.3d at 1348 (Fed. Cir. 2009) (en banc) (reversing district court's grant of summary judgment on invalidity and remanding for determination of damages), *cert. denied, Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 130 S. Ct. 1088, 1089 (2010). On May 5, 2010, Boston Scientific, Mirowski, and St. Jude entered into a stipulation of dismissal of the case; the court approved the stipulation and the case was closed. On September 10, 2010, Boston Scientific paid Mirowski $5,291,279.59, claiming that, under the applicable provision of the 2004 Agreement, it owed Mirowski royalties on only 10% of its United States sales from July 5, 2002, through December 11, 2003. After realizing that it omitted royalties from the first half of 2002 (under its 10% formula), Guidant paid another $1,384,241.79. Boston Scientific explained its 10% payment as follows: "In calculating the royalty, we used a base of 10% of U.S. sales, representing the products that used the method of claim 4 in the U.S. and thus were covered by the '288 patent." Mirowski objects to the payments, contending that more is due.

On May 31, 2011, Boston Scientific filed suit against Mirowski, seeking declarations of noninfringement, satisfaction of royalty obligation, and no breach of contract. Mirowski filed its Answer and Counterclaims, of which the following remain and pertain to the summary judgment motions:

- First Counterclaim for Breach of Contract as to the Accrued Royalties
- Second Counterclaim for Breach of Contract for Improper Settlement
- Third Counterclaim for Breach of Contract, Joint Venture
- Sixth Counterclaim for Unjust Enrichment

- Seventh Counterclaim for Constructive Fraud

Mirowski moves for summary judgment as to its First Counterclaim and partial summary judgment as to its Second Counterclaim. Boston Scientific moves for summary judgment on each of Mirowski's counterclaims listed above. The Court rules as follows.

## III. DISCUSSION

### A. Mirowski's First Counterclaim for Breach of Contract

In its first Counterclaim, Mirowski asserts that Boston Scientific breached the 2004 Agreement when it refused to pay royalties on more than 10% of the ICDs it sold during the applicable period. Boston Scientific, in turn, argues that it owed royalties on only 10% of the ICDs it sold and has paid those royalties; therefore, it owes no further royalties and it has not breached the 2004 Agreement.

The parties agree that the 2004 Agreement governs Boston Scientific's royalty obligations and they agree that Boston Scientific's obligations are governed by the following provision:

> In the event there is in the Litigation a final non-appealable judgment that St. Jude infringes a valid claim of the '288 Patent and that the '288 Patent is properly subject to the previously granted patent term extension, GUIDANT will pay to MIROWSKI a sum equal to all royalties that accrued pursuant to the License Agreement on products covered by any such claims of the '288 Patent from the date such royalty payments were suspended to the date of expiration of the '288 Patent together with interest at the prime rate as published in the Wall Street Journal as compounded quarterly from the date payment is due to the date of payment. Such payment will be made by GUIDANT within ninety (90) days after such decision becomes final and not subject to further appeal.

The parties also agree that the conditions precedent to the payment under this section of the agreement were met. The dispute arises with respect to what products are "covered by" the method claim; in other words, the parties dispute the percentage of products on which royalties accrue. Mirowski urges that "covered by" means all ICDs capable of practicing the method

9

claim, while Boston Scientific asserts that "covered by" should be read as synonymous with infringement as that term is defined in an entry from the St. Jude Indiana Litigation – that is, "actually practicing" the patented method claim. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 418 F.Supp.2d 1021, 1039-42 (S.D. Ind. 2006).

The parties' approaches to this inquiry yield quite the paradox. The parties agree that the term is unambiguous – Mirowski argues that "the plain language of this Agreement leads to but one conclusion," Mirowski's Br. at 29, No. 127, while Boston Scientific asserts that "Federal Circuit precedent makes [its meaning] clear," Boston Scientific's Br. in Opp'n at 26, No. 136-1 – yet they disagree about what that clear, singular definition is.[7] Of course, the parties' disagreement over the meaning of the term does not ipso facto render it ambiguous. *E.g.*, *Roy A. Miller & Sons, Inc. v. Indus. Hardwoods Corp.*, 775 N.E.2d 1168, 1173 (Ind. Ct. App. 2002). Rather, a term is ambiguous when reasonable people could come to different conclusions about its meaning. *Id.* The first step in the inquiry, then, is to determine whether there are multiple reasonable interpretations of the term at issue.

The meaning of a contractual provision reflects "the intent of the parties at the time the contract was made [as indicated by] the language that the parties used to express their rights and duties." *Allen v. Cedar Real Estate Grp., LLP*, 236 F.3d 374, 381 (7th Cir. 2001) (applying Indiana law).[8] Given the scope of the inquiry, the interpretation urged by Boston Scientific is

---

[7] "When opposing parties agree that the document whose meaning they dispute is not ambiguous, all they mean is that they are content to have its meaning determined without the help of any 'extrinsic' evidence." *Matter of Envirodyne Indus., Inc.*, 29 F.3d 301, 304 (7th Cir. 1994). The Court therefore disregards the parties' references to Mirowski's and Boston Scientific's contemporaneous and subsequent actions. *See id.*

[8] Neither party explicitly addresses what law applies to the contract, although both parties periodically cite Indiana law. In the absence of any argument on the subject, the Court

problematic at the outset. Boston Scientific argues that "covered by" can only mean "infringed," which, in the context of a method claim, requires actual performance of the method claim. This was an explicit holding of the Federal Circuit when it affirmed the district court's holding to the same effect. *See Cardiac Pacemakers*, 418 F.Supp.2d at 1039-42, *aff'd*, *Cardiac Pacemakers*, 576 F.3d at 1359, *cert. denied*, *Cardiac Pacemakers*, 130 S. Ct. at 1089. However, Boston Scientific explains elsewhere that the parties' "positions" and "understandings" of this term were "modified" by those 2006 and 2009 decisions delimiting the scope of direct infringement of a method claim. Boston Scientific's Br. in Opp'n at 21-22, No. 136-1. In other words, Boston Scientific admits that the meaning it advocates now arose in part out of the 2006 and 2009 rulings. Thus, even if at the time the 2004 Agreement was executed, the parties intended "covered by" to mean "infringed" as they understood it at that time, it is clear that the position urged by Boston Scientific today – that "covered by" means "infringed," which means "actually practicing" – is not a reasonable interpretation of what the parties intended at the moment of execution. Accordingly, Boston Scientific is not entitled to summary judgment as to this claim.

A close reading of the provision further renders unreasonable Boston Scientific's argument that "covered by" means "actually practicing." Boston Scientific's possible royalty obligations extend to only those products covered by method claim 4, but that is as far as the provision goes. Under the 1973 License, Mirowski was entitled to royalties on products covered by valid claims; under the 2004 Agreement, Mirowski is entitled to royalties on products covered by valid claims *that are infringed by St. Jude*. However, even at the time the agreement was executed, there could never be a finding that St. Jude infringed claim 13 of the '288 patent,

---

assumes that Indiana law applies. *See Sun Studs, Inc. v. Applied Theory Assocs., Inc.*, 772 F.2d 1557, 1561 (Fed. Cir. 1985) (applying originating circuit law to substantive, non-patent issues).

because the parties did not appeal the jury's finding of noninfringement as to claim 13. Yet claim 13 was ultimately held valid, which under the prior 1973 License and restated 2004 License would appear to require the payment of royalties on products covered by that claim. It appears there could have been little argument that all ICDs sold by Boston Scientific would trigger royalty obligations under claim 13. *See, e.g.*, *Cardiac Pacemakers*, 576 F.3d at 1358 ("the damages on the apparatus claims would have covered any sale of an apparatus that *could* execute the elements of the claims (emphasis in original)); *Cardiac Pacemakers*, 418 F. Supp. 2d at 1039 ("On the apparatus claim, a finding of infringement would have made St. Jude liable on *all* device sales."). Nevertheless, to further limit "covered by" as Boston Scientific contends would be to apply the particular circumstances of the St. Jude litigation – an action at law against an infringer for damages after a patent had expired – to an entirely different situation – a bargain struck between a patent owner and licensee while a patent was valid and before the prospective licensee had entered the market, with that bargain subsequently suspended by agreement – when the language of the provision is not so restrictive. To so limit the term would ignore the incentives for patent licensure: avoidance of litigation, certainty of royalty expenses, and the first mover advantage.

However, construing "covered by" to mean "infringed" is a reasonable interpretation when one considers the full meaning of that term. "The proprietary rights granted by any patent are the rights to exclude others from making, using, or selling the invention in the United States." *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031-32 (Fed. Cir. 1995) (citing 35 U.S.C. § 154). Thus, a product is "covered by" a patented claim if the patent owner could exclude its manufacture, use, or sale in the United States. If push came to shove, a patent owner would enforce his rights to "exclude" through the judicial system, but this construction is not

12

limited to actions at law. A patent owner may also assert his rights in equity, see 35 U.S.C. § 283, and it is through the lens of equity that the breadth of the term "infringed" and therefore "covered by" is revealed. It is true that direct infringement is an element of all actions for infringement. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010). With respect to an action for infringement of a method claim such as claim 4, this means that at least some products must actually perform the patented method before infringement will be found. *Id.* at 861. However, more than merely "actually-performing" products are subject to exclusion when relief is forward-looking, for once it is established that at least some products would directly infringe the patent, then the manufacture, sale, or use of all products may be enjoined if induced infringement can be shown. *See id.* (affirming district court's grant of permanent injunction prohibiting sale, offer of sale, or import of products capable of executing method claim at issue after affirming jury verdict on induced infringement, in part because reasonable jury could have found that at least one person performed method claim). In other words, the manufacture, use, and sale of products that do not actually perform the method, but are capable of performing the method, may be enjoined if the elements of induced infringement can be proved. Under the 2004 Agreement, a product is "covered by" a method claim if the same showing can be made.[9]

---

[9] This construction also harmonizes the provisions of the contract. *Allen*, 236 F.3d at 381. As Mirowski points out, royalty obligations are calculated based on "initial sales" – that is, the total aggregate selling price received by Guidant for a device after the deduction of discounts, taxes, and delivery costs. 2004 License, Art. I, Sec. 4. This calculation is nearly impossible if royalties are only due on those ICDs that, at some future point in time, will perform cardioversion (method claim 4). Furthermore, a more limited interpretation of "covered by" strains common sense. Under Boston Scientific's interpretation, if the parties' lost their suit against St. Jude, meaning that Boston Scientific would recover no damages from St. Jude, it is obligated to pay *more* to Mirowski than if they had won. Indeed, elsewhere Boston Scientific characterizes the $15 million dollar payment as the "minimum" consideration supporting the release provision. Boston Scientific's Br. at 29, No. 124.

While the interpretation urged by Mirowski takes some aspects of this analysis into account, Mirowski skips ahead when it argues simply that Boston Scientific owes royalties on all ICDs it sold. In order for a product to be "covered by" a claim, even in the context of induced infringement, additional showings must be made. "To prove inducement, the patentee must show direct infringement, and that the alleged infringer 'knowingly induced infringement and possessed specific intent to encourage another's infringement." *i4i*, 598 F.3d at 851 (finding that reasonable jury could have concluded that infringer had "affirmative intent to cause direct infringement" when it saw and heard evidence about alleged infringer's online training and user support resources, which provided detailed instructions on performing patented method). Mirowski has not yet made these showings and therefore has not designated evidence sufficient to entitle it to summary judgment on this claim.

The foregoing analysis has yielded only one reasonable interpretation of "covered by," and therefore the Court concludes that the term is unambiguous. "[T]he construction of an unambiguous written contract is a question of law for the court," *Allen*, 236 F.3d at 380, and it is therefore appropriate for the Court to determine the parties' obligations. Pursuant to paragraph 4(c) of the 2004 Agreement, Boston Scientific is obligated to remit to Mirowski royalties on ICDs that Mirowski could have excluded from manufacture, sale, or use in the United States, were it not for Boston Scientific's license. This means that all ICDs that would "infringe" the patent – whether in an action at law or a suit in equity – are "covered by" the patent and trigger royalty obligations. At this time, Boston Scientific has paid royalties only on those ICDs that directly infringe the patent. However, Mirowski may be entitled to additional royalties if additional ICDs would be subject to permanent injunction under the induced infringement

framework. It is unclear based on the evidence before the Court whether any additional ICDs would be subject to injunction. Accordingly, neither party is entitled to summary judgment.[10]

### B. Mirowski's Second Counterclaim for Breach of Contract

In its second Counterclaim, Mirowski alleges that Boston Scientific breached the 2004 License when in settled with St. Jude in 2006. According to Mirowski, Boston Scientific breached two clauses in the provision of the 2004 License relating to infringement actions. First, Boston Scientific did not elicit Mirowski's "mutual agreement" as to the conduct of the litigation, and second, Boston Scientific did not afford Mirowski its "right to participate" in the litigation when it settled with St. Jude. The Court addresses each provision in turn.

Mirowski contends that Guidant's "mutual agreement" was required with respect to the conduct of the litigation, and that mutual agreement was not obtained as to the settlement. According to Mirowski, the phrase "subject to mutual agreement between Guidant and Mirowski" in both the 1973 and 2004 Licenses "enacts a check on Boston Scientific's conduct first by requiring Mirowski's mutual agreement before Boston Scientific can bring an infringement action against an infringer with sales exceeding $75,000." This interpretation leads to absurd results. First, Mirowski argues that this provision was added to enable Mirowski to "protect the value of its patent portfolio," because patent litigation inevitably risks the ongoing viability (and profitability) of the underlying patent. However, under Mirowski's interpretation, the contract permits Guidant to bring suit against infringers with sales less than $75,000 without first obtaining Mirowski's agreement. It seems that such an infringement suit bears as much risk to the underlying patent as suit against infringers with sales exceeding $75,000; yet in this case,

[10] The Court is aware that Mirowski has moved for sanctions against Boston Scientific due to spoliation of evidence and that one requested sanction is summary judgment on Counterclaim One. The Court will address Mirowski's motion in due course.

Mirowski is afforded no "check" on Boston Scientific's decision to litigate and risk the patent. Second, Mirowski's interpretation means that Boston Scientific is under no obligation to bring suit if it does not also agree to do so. Under Mirowski's interpretation, bringing suit is predicated on "mutual agreement" between the parties, not on Mirowski's agreement alone. Yet this effectively means that Boston Scientific forever retains the right, but not the obligation, to file suit. This construction conflicts with the phrase "shall" in the 2004 License, as well as the use of the term "obligation" in the 1973 License.

The only reasonable interpretation of the phrase "subject to mutual agreement" in the contract is that Boston Scientific *must* bring and conduct suit against infringers with sales exceeding $75,000, *unless* Mirowski and Boston Scientific agree that suit should not be brought. Read in this light, the requirement of "mutual agreement" applies not to Boston Scientific's subsequent decisions in the course of litigation, but rather explains the circumstances under which Boston Scientific is relieved of its obligation to bring suit. This provision is therefore completely inapplicable to Boston Scientific's settlement with St. Jude.

Mirowski next argues that Boston Scientific breached the contract because it denied Mirowski the "right to participate" in the litigation. Mirowski argues that the "right to participate" clause imposes a duty on Boston Scientific to disclose the fact of its negotiations as well as seek or obtain Mirowski's participation in these negotiations. Mirowski's Br. at 28, No. 127. Assuming that Mirowski's interpretation is correct, Mirowski is nevertheless not entitled to summary judgment. It is undisputed that the Mirowski family attorney, Sidney Silver, was informed that Boston Scientific was engaged in settlement negotiations with St. Jude, yet Mr. Silver did not seek to be included in those discussions. However, it is also undisputed that Mr. Silver believed the settlement window closed on June 30, 2006, but negotiations continued and

settlement was ultimately reached. Whether, on these facts, Mirowski was denied the "right to participate" is a question for the jury. For this reason, Mirowski is not entitled to summary judgment as to this claim.

### C. Effect of Release on Mirowski's Remaining Counterclaims

Boston Scientific argues that Mirowski's Counterclaims Two, Three, Six, and Seven are barred by the release and discharge provision of the 2004 Agreement. That provision provides:

> MIROWSKI, for itself, its officers, owners, partners, agents, successors and assigns (collectively, the "Mirowski Parties"), releases and forever discharges GUIDANT, its present subsidiaries, directors, officers, employees, successors, assigns, and transferees (collectively, the "Guidant Parties") from any and all causes of action, claims and demands whatsoever in law or in equity that any Mirowski Party has, had or may have against any Guidant Party, based on or arising from the [Indiana Litigation] or from any non-payment of royalties under patents in the [Indiana Litigation].

According to Boston Scientific, this provision bars Mirowski's remaining counterclaims because these claims are based on or arise from the Indiana Litigation. However, according to Mirowski, Boston Scientific may not enforce this provision because it committed the first material breach of the 2004 Agreement.

"A party who fails to make payments as required by a contract is guilty of a breach thereof" and "[a] party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract." *Licocci v. Cardinal Assocs., Inc.*, 492 N.E.2d 48, 52 (Ind. Ct. App. 1986) (citation omitted). Accordingly, if Boston Scientific breached the 2004 Agreement because it owed royalties on more than 10% of the ICDs it sold, but refused to pay what it owed,

it may not enforce the release against Mirowski.[11] As a result, Boston Scientific is not entitled to summary judgment as to these claims at this juncture.

### D. Calculation of Damages on Mirowski's Remaining Claims

Boston Scientific next argues that, even if Mirowski's claims relating to settlement are not barred by the release and discharge provision, it is nevertheless entitled to summary judgment because Mirowski is unable to prove its damages to a reasonable degree of certainty. Indiana law requires a plaintiff to establish damages with sufficient certainty to avoid speculation or conjecture by the jury; otherwise, the defendant is entitled to judgment as a matter of law. *Shepard v. State Auto Mut. Ins. Co.*, 463 F.3d 742, 749 (7th Cir. 2006). However, assuming that Mirowski can establish causation,[12] it should have little trouble establishing its damages to the requisite degree of certainty. If the jury finds that Boston Scientific and Mirowski would have prevailed in their suits against St. Jude, the jury will then simply determine what the damages in that suit would have been, an inquiry that will be based on the same evidence that the St. Jude juries would have heard. Surely Boston Scientific does not contend that the evidence it could have presented to the St. Jude juries on damages would have been insufficient. It is likewise sufficient here.

---

[11] Boston Scientific does not argue that, even if it breached the 2004 Agreement first, this principle is somehow otherwise inapplicable to it.

[12] The assumptions on which Boston Scientific argues Mirowski must rely in order to be successful -- for example, that the parties "would have necessarily maintained the dropped damages claims at trial" even after Mirowski's counsel suggested that it not press its claim for lost profits – are obstacles to establishing causation, not damages. *See, e.g.*, *Warrior Sports, Inc. v. Dickinson Wright, PLLC*, 631 F.3d 1367, 1371 (Fed. Cir. 2011) (noting that plaintiff "must still prove it would have been successful in the underlying litigation but for the alleged errors" (citations omitted)). However, as Boston Scientific frames the issue as a problem of damages, not causation, the Court does so as well.

## IV. CONCLUSION

Boston Scientific's and Mirowski's motions for summary judgment are **DENIED**.

SO ORDERED: 11/30/2012

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.