UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MIROWSKI FAMILY | ) | |
| VENTURES, LLC, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| vs. | ) | Cause No. 1:11-cv-736-WTL-DKL |
| | ) | |
| BOSTON SCIENTIFIC | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |

ENTRY ON MOTIONS REGARDING EXPERT TESTIMONY

This cause comes before the Court on related motions – Boston Scientific's Motion to

Preclude the Testimony of Larry S. Nixon (dkt. no. 199); and Mirowski's Motion to Preclude the

Testimony of Thomas Filarski (dkt. no. 217). The parties seek preclusion of expert testimony

pursuant to Federal Rule of Evidence 702.

I.      STANDARD

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), established the

standard for determining the admissibility of scientific evidence and the Federal Rules of

Evidence were thereafter amended to reflect the law as set forth in *Daubert*. Federal Rule of

Evidence 702 provides: "A witness who is qualified as an expert by knowledge, skill,

experience, training, or education may testify in the form of an opinion or otherwise if: (a) the

expert's scientific, technical, or other specialized knowledge will help the trier of fact to

understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient

facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the

expert has reliably applied the principles and methods to the facts of the case." In other words,

the testimony must be relevant and reliable. *United States v. Allen*, 390 F.3d 944, 949 (7th Cir.

2004). "The proponent of the expert bears the burden of demonstrating that the expert's

testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698,

705 (7th Cir. 2009).

## II.   BACKGROUND

The long and muddy history of this case has been set forth in the Court's summary

judgment entry and is incorporated by reference here.

Boston Scientific seeks the preclusion of the testimony of Larry S. Nixon, one of

Mirowski's expert witnesses. Nixon is expected to testify to the meaning of specific contractual

terms in the 1973 and 2004 License Agreements.

Mirowski seeks to preclude the testimony of Boston Scientific's expert witness, Thomas

Filarski. Filarski is expected to testify as the meaning of certain contractual terms, as well as the

value and effect of the 2006 Settlement.

## III.   DISCUSSION

### A.   Meaning of Contract Terms

Each motion seeks to exclude the testimony of an expert as to the meaning of certain

terms in the parties' 2004 License Agreement. The Court addresses the motions with respect to

each term.

Boston Scientific seeks to exclude Nixon's opinion regarding "his new understanding of

'covered by' based on two court decisions that substantially post-date the Agreements at issue in

this case," while Mirowski seeks to exclude the testimony of Filarski as to "covered [by]," in

"light of his own reading of decisions from the Indiana litigation."

In ruling on the parties' cross-motions for summary judgment, the Court held:

> The foregoing analysis has yielded only one reasonable interpretation of "covered by," and therefore the Court concludes that the term is unambiguous. "[T]he construction of an unambiguous written contract is a question of law for the court," *Allen*, 236 F.3d at 380, and it is therefore appropriate for the Court to determine the parties' obligations. Pursuant to paragraph 4(c) of the 2004 Agreement, Boston Scientific is obligated to remit to Mirowski royalties on ICDs that Mirowski could have excluded from manufacture, sale, or use in the United States, were it not for Boston Scientific's license. This means that all ICDs that would "infringe" the patent – whether in an action at law or a suit in equity – are "covered by" the patent and trigger royalty obligations.

Entry on Summ. J. at 14, No. 235. Recognizing that the Court has held that the term is unambiguous, the parties agree that Boston Scientific's motion as to Nixon is moot. Insofar as the Court's Entry has rendered irrelevant Nixon's testimony as to the meaning of "covered by," the Court agrees. In the same way, the Court's Entry has rendered irrelevant Filarski's testimony on the meaning of "covered by."

Mirowski also seeks to preclude Filarski from testifying as to the meaning of the term "mutual agreement" in the 1973 and 2004 Licensing Agreements. With respect to this term, this Court held

> The only reasonable interpretation of the phrase "subject to mutual agreement" in the contract is that Boston Scientific *must* bring and conduct suit against infringers with sales exceeding $75,000, *unless* Mirowski and Boston Scientific agree that suit should not be brought. Read in this light, the requirement of "mutual agreement" applies not to Boston Scientific's subsequent decisions in the course of litigation, but rather explains the circumstances under which Boston Scientific is relieved of its obligation to bring suit. This provision is therefore completely inapplicable to Boston Scientific's settlement with St. Jude.

Entry on Summ. J. at 16, No. 235. The Court's Entry therefore also renders irrelevant Filarski's testimony as the meaning of "mutual agreement."

Finally, Mirowski seeks to preclude Filarski from testifying as to the meaning of the term "right to participate" in the 1973 and 2004 Licensing Agreements. According to Mirowski, Filarski's opinion invades the provinces of judge and jury. *See Loeb v. Hammond*, 407 F.2d 779,

3

781 (7th Cir. 1969) ("The question of interpretation of the contract is for the jury and the question of legal effect is for the judge. In neither case do we permit expert testimony."). As far as substantive law is concerned, Boston Scientific agrees. Boston Scientific's Br. at v., No. 200. And, indeed, "generally, in the absence of an ambiguity, the construction of such written contracts is a question of law for the court to decide, and expert testimony on the matter of interpretation is improper." *Hamilton Airport Advertising, Inc. v. Hamilton*, 462 N.E.2d 228, 235 (Ind. Ct. App. 1984). However, the Court finds the term "right to participate" ambiguous; it is susceptible to several meanings, each involving a different level of control in the litigation. While the term may not be unique to patent contracts, testimony on the custom and usage of the term in the patent industry would be helpful to resolve the ambiguity. *See WH Smith Hotel Servs., Inc. v. Wendy's Intern., Inc.*, 25 F.3d 422, 429 (7th Cir. 1994) (permitting expert testimony regarding calculating percentage rent in commercial real estate industry). Accordingly, Mirowski's motion as to Filarski's testimony about the meaning of "right to participate" is denied.

### B.      Filarski's Opinions Regarding the 2006 Settlement

#### 1.  Filarski's Qualification as an Expert

Mirowski first argues that Filarski's testimony regarding the value and effect of the 2006 Settlement must be precluded because Filarski is not qualified to opine on matters of patent infringement litigation. Boston Scientific, of course, contends that Filarski is more than qualified.

"Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness." *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). Mirowski argues that Filarski has no *relevant* experience, as he "has never first-chaired a jury trial," "has no experience litigating

licensor/licensee disputes," "has never tried a claim [like that in the Indiana and Delaware cases] to a jury and lacks the relevant experience to determine the potential risks to St. Jude had this claim been tried to a jury." Mirowski's Br. at 8-9, No. 218. The Court does not find Filarski to be nearly as inexperienced as Mirowski makes him out to be. In fact, Filarski's credentials are both extensive and relevant: in his twenty-five years of practice, he has litigated numerous trials – including a few jury trials; he has been recognized as both a "leading patent litigator" by Intellectual Asset Management magazine in 2011 and a "leading life sciences patent litigator" by the same in 2010; he currently serves as President of the Licensing Executives Society; and he authors the chapter "Patent Defenses" in BNA Books' Patent Litigation Strategies Handbook, to name just a few. After reviewing Filarski's credentials, the Court finds him qualified to opine on the value and effect of the 2006 Settlement.

## 2. Filarski's Opinion

Mirowski also argues that Filarski's testimony should be precluded because he (1) ignores the monetary value that is the key issue underlying Mirowski's claims and an assessment of damages, and (2) ignores the relative merit of individual claims and defenses, as he admittedly did not do a "one-to-one" comparison. Mirowski's Br. at 17, No. 218.

At its core, Mirowski's first objection attacks the relevancy of Filarski's opinion as stated in his report. According to Mirowski, broad statements of "value" shed little light on the monetary award Mirowski seeks as a result of the allegedly wrongful 2006 Settlement. It is true that an opinion that the settlement was a "reasonable exchange of value" would offer little help to the jury when it is asked to assign a monetary value to the damage Mirowski suffered as a result of the settlement. But such an argument puts the cart before the horse – supposed irrelevancy with respect to the quantum of damages does not mean that Filarski's opinion is

5

irrelevant to other aspects of Mirowski's claims against Boston Scientific. Given the appropriate foundational showing, Filarski's opinion may be both relevant and admissible.

Mirowski's second objection goes to the methodology Filarski used to draw his conclusions about the value of the Settlement. As Mirowski sees it, Filarski's methodology is "inherently unreliable" because he does not probe each claim and defense of the settlement deep enough. But the Court finds Filarski's methodology appropriately calibrated to the scope of his report, defined as "consider[ing] and respond[ing] to certain aspects of the Expert Reports of Judge Roderick R. McKelvie and Larry S. Nixon." Filarski Rep. at 2, Ex. 1 to No. 218. Were Filarski to opine more concretely on the valuation of certain claims and defenses, the Court would expect an appropriately probing methodology, but, as it stands, Filarski's methodology is sufficient for its purpose.

Mirowski also objects to Filarski's "factual basis," insofar as it objects to certain assumptions he made and certain values he assigned to some claims and defenses. However, in truth, these "objections" are mere disagreement with Filarski's opinions and the factual assumptions he has made after his review of the record. These "objections" go to weight, not admissibility, and Mirowski is free to inquire of them during cross-examination.

## IV.     CONCLUSION

Boston Scientific's motion (dkt. no. 199) is **DENIED AS MOOT**. Mirowski's motion

(dkt. no. 217) is **DENIED AS MOOT** as to Filarski's testimony about the meaning of "covered

by" and "mutual agreement." Mirowski's motion (dkt. no. 217) as to Filarski's testimony about

the meaning of "right to participate" is **DENIED.** Mirowski's motion to preclude the testimony

of Filarski as to the value and effect of the 2006 Settlement (dkt. no. 217) is **DENIED**.

SO ORDERED:    02/01/2013

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.