UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **MIROWSKI FAMILY** ) | |
| **VENTURES, LLC,** ) | |
| ) | |
| Counterclaimant, ) | |
| ) | |
| vs. ) | Cause No. 1:11-cv-736-WTL-DKL |
| ) | |
| **BOSTON SCIENTIFIC** ) | |
| **CORPORATION,** *et al.*, ) | |
| ) | |
| Counterclaim Defendants. ) | |

## ENTRY REGARDING DR. MOWER

This cause comes before the Court on Mirowski's motion to preclude Boston Scientific from arguing noninfringement of the '119 patent (docket no. 288). The Court addresses the motion as follows.

On January 6, 2012, Mirowski filed a motion to disqualify counsel of Boston Scientific. Mirowski asserted that law firm Finnegan Henderson Farabow Garrett and Dunner's continued representation of Boston Scientific would violate rules of professional conduct regarding conflicts of interest because Finnegan had previously represented Mirowski during the prosecution of the patents at issue in this case. Specifically, Finnegan's continued representation might run afoul of Indiana Rule of Professional Conduct 1.9(a), which provides that "a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Alternatively, even if no attorney-client relationship had existed, Mirowski argued that

the appearance of impropriety created by Finnegan's representation of Boston Scientific required disqualification.

In ruling on that motion, the Court reviewed the evidence before it regarding the nature of the relationship between Mirowski and Finnegan during the prosecution of patents '288 and '119. The Court noted that Finnegan attorneys had at times represented in filings that they represented the "patent owners" – that is, Mirowski – and had testified to the same during two depositions. In addition, the evidence before the Court was that Mirowski viewed Finnegan as its attorneys and had executed powers of attorney in favor of Finnegan in order for Finnegan to prosecute the patents.

The Court noted that a power of attorney does not ipso facto create an attorney-client relationship but that it could be evidence of such a relationship. In analyzing the other evidence before it, the Court noted that the 1973 and 2004 Licenses contemplated a relationship between a patent owner and an attorney prosecuting the patent that would qualify as an attorney-client relationship, but noted that the question before it was not whether a relationship *could* have been formed, but rather whether it was. The Court found that the only remaining evidence – Finnegan's statements to the PTO that it represented the "patent owners" – was insufficient to establish an attorney-client relationship.

Turning to the appearance of impropriety, the Court recognized that permitting a law firm to later question the validity of patents it helped prosecute would cast a shadow over the integrity of the patent prosecution system. However, relying on Boston Scientific's express representation to the Court that it would not contest the validity of the patents, the Court found that no appearance of impropriety arose. Mirowski's motion was denied.

2

One year later, on January 10, 2013, Mirowski filed eleven motions in limine in anticipation of trial scheduled for February 25, 2013. It is Mirowski's fourth motion in limine that concerns the Court today.

This motions seeks to preclude Boston Scientific from contending that the '119 patent was not infringed in the Delaware Litigation, in part on the basis of Boston Scientific's representations that it would not contest validity. In pertinent part, this motion raises an issue regarding the cross-examination of Dr. Morton Mower, a co-inventor of the '119 patent. Dr. Mower assigned the '119 patent to Mirowski in return for a 27% interest in proceeds related to Mirowski's patent portfolio, including the Delaware and Indiana Litigations.

Mirowski has disclosed Dr. Mower as an expert witness who will be called to testify at trial.

> Dr. Mower may be called to testify as an expert on electrophysiology, implantable cardioverter-defibrillators, cardiac rhythm management and resynchronization therapy devices, U.S. Patent No. 4,407,288, and U.S. Patent No. RE 38,119. Dr. Mower's expert opinions would be based on his decades of experience as a physician and inventor, the facts arising out of the development of the patents and devices at issue in this case and known to Boston Scientific prior to Dr. Mower's deposition in this matter. Dr. Mower may also rely on facts related to the usage of ICDs and topics discussed during the deposition of Dr. Mower in this case. Dr. Mower's opinions may include opinions offered during his deposition in this case; descriptions of the patents and inventions at issue, their uses and benefits; the meaning of cardioversion; the meaning of defibrillation; implantation testing procedures; and an opinion that ICD devices perform the steps of claim 4 of the '288 patent on implantation and at other times.

Mirowski's Rule 26 Disclosures at 2, Ex. 3 at No. 268.

Dr. Mower's testimony has previously been the subject of a motion by Boston Scientific. In that motion, Boston Scientific sought to preclude Dr. Mower's testimony on "infringement" of the '119 patent because the disclosure quoted above did not include infringement within its scope. The Court denied Boston Scientific's motion, distinguishing between factual testimony

3

and what theory that factual testimony may support. The Court held that Dr. Mower could not testify to a legal opinion on infringement because he was not qualified to do so, but he could testify to his knowledge of the "benefits and uses" of the patent technology, which may support Mirowski's infringement argument.

Mirowski now seeks to preclude Boston Scientific from contesting infringement during its cross-examination of Dr. Mower. According to Mirowski, Dr. Mower and Finnegan had an attorney-client relationship during a different suit in Delaware regarding the '119 patent, during which Mirowski assumes Finnegan obtained confidential information useful to this case. In support, Mirowski points to deposition testimony and privilege logs in which Finnegan asserted attorney-client privilege over communications between it and Dr. Mower. Finnegan must be barred from contesting infringement, Mirowski goes on to argue, because, if "Boston Scientific (and Finnegan) [were] to now reverse course and claim the '119 patent was not infringed by St. Jude or anyone else, it would place Finnegan in the untenable position of using information obtained during its prior representation of Dr. Mower—which was withheld from discovery from infringers because it was confidential—against their former client, Dr. Mower."

Boston Scientific argues that no attorney-client relationship existed. Instead, they claim that the evidence Mirowski cites is merely evidence that "Dr. Mower did not break privilege between Finnegan and Guidant – it is not proof of an attorney-client relationship with him." At bottom, Boston Scientific distinguishes a "client" from one who has merely a "common interest" with an attorney's client and therefore does not break privilege in communications with them. *See Reginald Martin Agency, Inc. v. Conseco Medical Ins. Co.*, 460 F. Supp.2d 915, 917-18 (S.D. Ind. 2006).

4

There are a number of issues raised in this motion that concern the Court. Of greatest concern to the Court is the fact that this issue may mean much more than simple preclusion of certain arguments or cross-examination of Dr. Mower. Rather, the arguments raised here suggest that it may be improper for Finnegan to continue as counsel in this case *at all.* If there were an attorney-client relationship between Dr. Mower and Finnegan, Finnegan's continued representation of Boston Scientific may run afoul of Indiana Rule 1.9(a) (see above) and 1.9(c).[1] That is, simply handing cross-examination off to co-counsel (whether of the same firm or not) may not cure the conflict, because Dr. Mower's prior firm may now be taking a position materially adverse to him. Furthermore, it may be that confidential information has already been shared with co-counsel in preparation for trial. Lastly, even if there is no conflict under the rules, the Court believes that an appearance of impropriety may nevertheless arise.

A hearing regarding Dr. Mower is necessary to determine whether a conflict exists. Critical issues regarding the nature of Dr. Mower's relationship with Finnegan, the scope of the prior representation, and Dr. Mower's interest in the current litigation must be resolved. Accordingly, a hearing is set for **Tuesday, February 12, 2013 at 10:00am in Courtroom 202** of the United States Courthouse for the Southern District of Indiana in Indianapolis, Indiana.

SO ORDERED:     02/08/2013

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

---

[1] "A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
    (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
    (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client." Ind. R. Prof'l Cond. 1.9(c).