UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>MIROWSKI FAMILY VENTURES, LLC, )<br>)<br>Defendant. ) | Cause No. 1:11-cv-736-WTL-DKL |

ENTRY ON MOTIONS IN LIMINE

This cause comes before the Court on Boston Scientific's Motion to Preclude the Testimony of Expert Witness Dr. Mohan Rao (dkt. no. 201). The motion is fully briefed, and the Court, being duly advised, rules as follows the motion.

I.   STANDARD

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), established the standard for determining the admissibility of scientific evidence and the Federal Rules of Evidence were thereafter amended to reflect the law as set forth in *Daubert*. Federal Rule of Evidence 702 provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." In other words, the testimony must be relevant and reliable. *United States v. Allen*, 390 F.3d 944, 949 (7th Cir. 2004). "The proponent of the expert bears the burden of demonstrating that the expert's

testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

## II.  BACKGROUND

The long and muddy history of this case has been set forth in the Court's summary judgment entry and is incorporated by reference here.

Mirowski's expert witness, Dr. Mohan Rao, summarizes his opinions as follows:

1. If St. Jude had paid the 3 percent royalty rate — which it was willing to pay for the Mirowski patents, even prior to litigation — on its infringing devices and leads, the cumulative royalty payments from St. Jude to Mirowski would have been $108.9 million. Netting out the cumulative $36.9 million settlement amounts reached between Mirowski and St. Jude subsequent to the [2006] Settlement, the net royalties lost by Mirowski as a result of the decision to litigate were $72.0 million.

2. The cumulative damages opinion, using Boston Scientific's methodology, that would have been jointly presented by Mirowski and Boston Scientific in the Delaware and Indiana Cases is $589.7 million to $1,055.2 million, depending on the portion of St. Jude's U.S. ICDs determined to be infringing. Mirowski's net proceeds would have been $257.9 million to $490.7 million.

3. The cumulative expected settlement amount in the Delaware and Indiana Cases is $318.2 million to $684.6 million, depending on the portion of St. Jude's U.S. ICDs determined to be infringing in the Indiana Case. Mirowski's net proceeds would have been $122.2 million to $305.4 million.

4. I was also asked to calculate unjust enrichment to Boston Scientific due to the [2006] Settlement. In my opinion, Boston Scientific was unjustly enriched by $318.2 million to $684.6 million based on the expected settlement amounts, and $589.7 million to $1,055.2 million based on the cumulative damages opinion using Boston Scientific's methodology.

Boston Scientific seeks the exclusion of each of these four opinions on various grounds.

## III.  DISCUSSION

### A.  Dr. Rao's Qualifications and Data on Which He Relied

Dr. Mohan Rao is an economist and Managing Director at Navigant Economics and an Adjunct Professor in the Department of Industrial Engineering and Management Sciences at Northwestern University. He earned a Bachelor of Science degree in engineering from the

2

University of Michigan, a post-doctoral fellowship from Harvard University, and a Ph.D. in economics from the University of Colorado. He is a member of the American Economics Association, the Licensing Executives Society, and the Institute of Electrical and Electronics Engineers. He teaches economics at Northwestern University and teaches advanced courses on intellectual property valuation and licensing to the Licensing Executives Society. He has performed expert economic and damages analyses in a wide range of matters, including cases involving patent infringement and breach of contract. Boston Scientific does not challenge Dr. Rao's qualifications to testify as to damages from the 2006 Settlement, and the Court sees no reason for it to have done so. Accordingly, the Court finds Dr. Rao qualified to opine on the subject matters outlined in his report.

Likewise, Boston Scientific does not appear to challenge the sufficiency of the data on which Dr. Rao and his team relied. According to Dr. Rao, he and his team reviewed "pleadings, expert reports, documents and economic information produced by the parties, deposition testimony, and publicly available information." The Court finds this sufficient.

Boston Scientific's objections to Dr. Rao's opinions fall into two categories – relevancy and methodology– to which the Court now turns.

### B. Relevancy

Boston Scientific contends that Dr. Rao's opinion regarding baseline royalties (opinion one) is "irrelevant, confusing, and a waste of time." Boston Scientific's Br. at 18, No. 202. Dr. Rao's opinion is irrelevant, Boston Scientific argues, because Mirowski cannot meet its burden to establish that, but for the Indiana and Delaware cases, it would have received this royalty. Indeed, the Court's summary judgment entry precludes certain factual assumptions on which Mirowski would rely to meet its burden. *See* Mirowski's Resp. at 19, No. 239 ("First, Mirowski

3

will prove that had it known *ex ante* that Boston Scientific viewed its ability to settle the Indiana Litigation as completely unfettered, it would never have agreed to initiate that litigation against St. Jude in the first place."). Specifically, the Court held that, pursuant to the license agreements, Boston Scientific was obligated to bring and conduct suit against infringers with sales exceeding $75,000, unless Mirowski and Boston Scientific agree that suit should not be brought. Entry on Mots. For Summ. J. at 16, No. 235. Furthermore, pursuant to the license agreements, "Mirowski agrees to join as a party plaintiff in any infringement suit or action brought by [Boston Scientific]." It appears, therefore, that Mirowski had no power to prevent Boston Scientific from bringing suit against St. Jude, so long as Boston Scientific desired to bring suit. As Mirowski cannot prove its admitted factual predicate to this testimony, the testimony is indeed irrelevant and therefore inadmissible.

Likewise, Boston Scientific contends that Dr. Rao's opinion as to the expected damages in the Delaware litigation (opinion two) is "irrelevant, confusing, and a waste of time." Boston Scientific again contends that this is so because Mirowski cannot meet its burden to show liability – that is, "MFV must prove that the Delaware jury *would have* found the '119 patent valid and infringed before Dr. Rao's opinion has any relevance whatsoever." Perhaps Mirowski cannot carry its burden, perhaps not – but Boston Scientific's argument comes too little, too late. An argument that Mirowski cannot meet its burden is more properly an argument on summary judgment, and one Boston Scientific did not raise at that time. Whether Mirowski can meets its burden remains to be seen and until Mirowski has that opportunity, the Court declines to preclude Dr. Rao's opinions on damages in the Delaware Litigation as irrelevant.[1]

---

[1] Mirowski acknowledges as much: "No one disputes that if a party cannot satisfy its liability burden, its damages opinions are rendered moot." Mirowski's Resp. at 18, No. 239.

### C. Methodology

Boston Scientific seeks the preclusion of much of Dr. Rao's testimony on the assertions that it is "speculative," "demonstrably wrong," and based on no fairly defined standard. But Boston Scientific's objections in substance do not illuminate some sort of unreliable application of methodology to the facts; rather, they demonstrate disagreement with the significance or insignificance Dr. Rao has assigned certain facts, as well as disagreement with certain assumptions he has made.

For example, Boston Scientific argues that Dr. Rao's damages opinion for the Indiana Litigation (opinion two) lacks "reasonable certainty" and "any degree of precision." Under this damages theory, Dr. Rao analyzes and uses Boston Scientific's expert reports from the underlying Indiana case, but, according to Boston Scientific, Dr. Rao assumes that there would have been no substantive change in these experts' opinions between 2001, when the reports were filed, and 2006, when the settlement occurred. According to Boston Scientific, "at the risk of speculating, even a hypothetical but-for damages expert would have scaled down his damages figures in view of" rulings in the intervening years. Boston Scientific's Br. at 22, No. 202. However, Dr. Rao's report evidences that he did adjust his opinion based on post-trial rulings. Rao Report at ¶ 64, Ex. 1 to 202. It is Boston Scientific's disagreement with the rulings Dr. Rao found significant (and insignificant) that is the true issue here, and this issue is properly raised on cross-examination, not a motion to preclude.

Boston Scientific also takes issue with Dr. Rao's use of an alternative 98% infringement rate, because it "necessarily suggests that the hypothetical would-be Indiana jury *could have* determined an appropriate infringement rate within this range." Boston Scientific's Br. at 23, No. 202. The Indiana jury could not have found a 98% infringement rate, Boston Scientific argues,

because that theory did not arise until 2012. Boston Scientific's argument is, at its most basic level, internally inconsistent. With respect to subsequent rulings, Boston Scientific essentially contends that any opinion that does not bring forward the underlying reports with an eye toward subsequent events is speculative and demonstrably wrong. In the next breath, however, Boston Scientific urges that theories that may have been developed in response to those new rulings may not be used. Boston Scientific can't have it both ways. It may delve into the likelihood of the genesis of that theory in the underlying litigation had the settlement not occurred, but it cannot preclude its use simply because it arose later in time.

According to Boston Scientific, Dr. Rao's settlement valuations of the Indiana and Delaware Litigations (opinion three) are "fraught with inconsistencies and unsupported speculation." Boston Scientific's Br. at 25, No. 202. Boston Scientific's primary objection to Dr. Rao's reasonable settlement value in Delaware is that, although he opines that any reasonable settlement value would take into account the respective positions of the opposing parties, he does not consider what St. Jude's experts would have put forth. Boston Scientific's objection is well taken.

At the beginning of his report, Dr. Rao lays out the "economics of settlements." He explains that "[t]he settlement must fall within some economically feasible range and reflect the perceived risks and potential liabilities/rewards to each party." Rao Report at ¶ 38, Ex. 1 to 202. Thus, a plaintiff would consider: "(i) the amount of damages it may receive, (ii) the probability of receiving the damages, (iii) the risk of having the patent invalidated, and (iv) strategic implications." Rao Report at ¶ 38, Ex. 1 to 202. A defendant would consider "(i) the amount of damages it may have to pay – including potential treble damages, (ii) the probability of paying the damages, and (iii) strategic implications." Rao Report at ¶ 38, Ex. 1 to 202. He then opines

that "[f]or a settlement to be agreeable, there must be overlap between the maximum amount of value the alleged infringer is willing to pay and the minimum amount of value the patent holder is willing to accept." Rao Report at ¶ 41, Ex. 1 to 202. Yet, in calculating his "cumulative expected settlement amount in the Delaware and Indiana cases" of $318.2 million to $684.6 million, Dr. Rao does not appear to take into account what St. Jude would have been willing to pay. Rather, Dr. Rao's analysis appears to yield only what it would have been reasonable for Boston Scientific and Mirowski to demand during settlement negotiations. It is true that in calculating this latter figure, Dr. Rao discusses the analysis of St. Jude expert Dr. Strickland, but Dr. Rao only does so in bringing Dr. Strickland's concerns to bear on Dr. Britven's lost profits analysis, and in the end, Dr. Rao rejects Dr. Strickland's criticisms. Dr. Rao's analysis is therefore inconsistent with the methodology he describes and is inadmissible.

Finally, Boston Scientific takes issue with the methodology Dr. Rao uses for his unjust enrichment analysis (opinion four), among other issues. At his deposition, Dr. Rao explained his unjust enrichment methodology as follows:

Q. How do you determine the value of unjust enrichment?

Rao: Oh, in this case we already know what the difference is between the but-for world in Indiana and the but-for world in Delaware compared to the actual world in Indiana and the actual world in Delaware. When split 50/50 and net out the settlement values, that's what the losses are to Mirowski, and we've –I've already calculated that, both in a case-by-case approach and in the expected settlement value approach.

Obviously, the full value before you net it out to Mirowski would be a measure of unjust enrichment for Boston Scientific.

Q. Would it be fair to say that under your analysis here the amount that Boston Scientific was unjustly enriched is the same as the amount Mirowski was damaged?

A. No.

Q. Why not?

A. Because Mirowski would only get a portion of the proceeds on whatever it is that Boston Scientific was enriched, unjust or otherwise, and so Boston Scientific's unjust or otherwise, and so Boston Scientific's unjust enrichment would be roughly twice what the expected proceeds would be to Mirowski.

This testimony demonstrates a fundamental misunderstanding of the doctrine of unjust enrichment, the contractual relationship of the parties, and the parties' positions at the time the settlement occurred. *See, e.g.*, *Midcoast Aviation, Inc. v. General Elec. Credit Corp.*, 907 F.2d 732, 745 (7th Cir. 1990). As such, it is inadmissible.

## IV. CONCLUSION

Boston Scientific's motion (dkt. no. 201) is **GRANTED** as to Dr. Rao's opinion on baseline royalties, reasonable settlement value, and unjust enrichment. It is **DENIED** as to Dr. Rao's opinion on expected litigation damages.

SO ORDERED: 2/15/13

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.