UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MIROWSKI FAMILY VENTURES, LLC, | ) ) ) |
| Counterclaim Plaintiffs, | ) ) |
| vs. | ) )  Cause No. 1:11-cv-736-WTL-DKL |
| BOSTON SCIENTIFIC CORPORATION, *et al.*, | ) ) ) ) |
| Counterdefendants. | ) |

**ENTRY ON MOTION TO EXCLUDE**

This cause comes before the Court on Mirowski's Motion to Exclude Expert Opinions of W. Todd Schoettelkotte (Dkt. No. 213). The motion is fully briefed, and the Court, being duly advised, rules as follows on the motion.

**I.   STANDARD**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), established the standard for determining the admissibility of scientific evidence and the Federal Rules of Evidence were thereafter amended to reflect the law as set forth in *Daubert*. Federal Rule of Evidence 702 provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." In other words, the testimony must be relevant and reliable. *United States v. Allen*, 390 F.3d 944, 949 (7th Cir.

2004). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

## II.   BACKGROUND

The long and muddy history of this case has been set forth in the Court's summary judgment entry and is incorporated by reference here.

Boston Scientific's expert witness, W. Todd Schoettelkotte, offers four opinions, which he summarizes as follows:

**1. BSC's Royalty Obligations to MFV**

> 10. For the period January 1, 2002 through December 11, 2003, I calculated a net overpayment of $1,961,322 made to MFV for royalties and interest owed on BSC ICD sales made in the United States (see Attachment 5A). As explained below, I understand that this overpayment is the result of BSC including CRT-D device revenue as part of its calculation of payments made to MFV in 2010 and 2011.
>
> 11. Additionally, I have calculated royalty and interest owed to MFV for BSC ICD sales in the United States for the period December 12, 2003 through December 23, 2003, to be $127,175 (see Attachment 5D). However, I note that this amount is less than the overpayment made by BSC on CRT-D device sales identified above.
>
> 12. In the event it is determined that MFV is entitled to royalties on associated BSC lead and accessory sales in the United States for the same time period, I have calculated such additional royalties and interest owed to be $1,345,952 (see Attachments 6A and 7A).

**2. Damages Relating to the Indiana Case**

> 13. My opinion is that Dr. Rao's damages analysis as it relates to the Indiana Case is grossly inconsistent with the readily available facts and rulings of the case. Dr. Rao has based his analysis on speculation, assumptions, and calculations that have been proven to be inaccurate, excessive, and/or inappropriate. Dr. Rao has inexplicably chosen to speculate as to what might have happened in the Indiana Case as opposed to relying on what actually did. As a result, Dr. Rao's damages analysis is not tied to the facts of the Indiana Case and significantly overstates the related damages, if any, to which MFV may be entitled.

14. In light of the facts and considerations discussed in detail later in this report, my opinion is that the $1.9 million payment received by MFV as part of its settlement of the Indiana Case with St. Jude is fair and reasonable.

**3. Damages Relating to the Delaware Case**

15. Similar to his damages analysis in the Indiana Case, Dr. Rao's analysis as it relates to the Delaware Case ignores relevant facts and is based on widespread speculation, yielding damages opinions that are unreliable and grossly excessive. Dr. Rao's conclusions are heavily dependent on the assumption that all of the asserted claims in the Delaware case would be found infringed, all of the asserted claims would be found not invalid, and damages would be awarded based on lost profits and reasonable royalties as set forth by MFV and BSC. As discussed later in this report, the accuracy of each of these assumptions is far from certain, and to assume all would be found true is even less so. By no means was it a foregone conclusion that MFV and BSC would have established liability in the Delaware Case, let alone received lost profit damages, if any damages at all.

16. Calculating damages based on such rampant speculation, as Dr. Rao has done, effectively provides MFV with the rewards of a successful litigation, but allows MFV to avoid the significant risks and uncertainties that are inherent in litigation. My opinion is that the $35.0 million that MFV received as settlement of the Delaware case is fair and reasonable and properly accommodates for the avoidance of such risk and uncertainty.

**4. BSC's Unjust Enrichment Resulting from its Settlement with St. Jude**

17. Dr. Rao's calculation of unjust enrichment in this case is founded on his damages calculations relating to the Indiana and Delaware cases. Dr. Rao's analysis is based on the same faulty assumptions and pervasive speculation discussed throughout this report, resulting in unsupported conclusions that are unreliable and not tied to the facts of this case. As explained later in this report, my opinion is that MFV has not shown that BSC has been unjustly enriched as a result of its settlement with St. Jude.

Expert Rep. of Schoettelkotte at 4-5, Ex. 3 to No. 214. In the instant motion, Mirowski moves to exclude the last three categories of testimony.

### III.   DISCUSSION

#### A.   Mr. Schoettelkotte's Qualifications and Data on Which He Relied

Mr. Schoettelkotte is a Certified Public Accountant ("CPA") licensed in Texas. He is a member of the American Institute of CPAs ("AICPA") and the Texas CPA Society and has

3

served as a Guest Lecturer at the Chicago Kent College of Law. He is also a Certified Valuation Analyst ("CVA") and a member of the National Association of Certified Valuation Analysts ("NACVA"). He is a member of the Licensing Executives Society ("LES"), an organization of more than 5,000 members, including corporate executives and professionals involved in the licensing and valuation of patents, trademarks, and other intellectual property.

Mr. Schoettelkotte is Director of IPFC Corp. ("IPFC"), an independent consulting firm that provides consulting services, including financial analysis and valuation assessments, for companies relating to technology issues, such as patents, trademarks, trade secrets, copyrights, and other forms of intellectual property. For more than eighteen years, he has provided financial consulting services in a variety of litigation matters and disputes, including intellectual property, breach of contract, business interruption, valuation, and general damage assessments. These services have included analyses of lost sales, lost wages, lost profits, incremental profits, reasonable royalty, product line profitability, fixed and variable cost analysis, cash flows, and other related financial information. He has consulted with numerous publicly traded and closely held companies in a variety of industries, including software, internet, telecommunications, electronics, consumer products, medical products, food services, oil and gas, biotechnology, and others.

On the whole, Mirowski does not challenge Mr. Schoettelkotte's qualifications to testify as to the value of royalties and the damages from the 2006 Settlement and the Court sees no reason for it to have done so. Accordingly, the Court finds Mr. Schoettelkotte qualified to opine on the subject matters outlined in his report. Mirowski does, however, raise the issue of Mr. Schoettelkotte's qualifications (specifically, that he is not a lawyer) with regard to specific

4

observations he makes about rulings in the underlying litigation. The Court will address those specific objections in the appropriate category of testimony.

Likewise, Mirowski does not appear to challenge the sufficiency of the data on which Mr. Schoettelkotte relied. According to Mr. Schoettelkotte, he reviewed "documents and data produced thus far by the parties in this case; legal documents generated as part of this case; deposition testimony given in this case (and related exhibits); reports submitted in this case by other experts; documents, data, expert reports, deposition testimony (and related exhibits), legal documents, and court rulings related to prior litigations between BSC and St. Jude Medical, Inc. ("St. Jude"); the patents associated with these prior St. Jude cases; and publicly available information such as Securities and Exchange Commission ("SEC") filings, annual reports, financial reports, articles, press releases, presentations, white papers, and Internet websites." Expert Rep. of Schoettelkotte at 4, Ex. 3 to No. 214. The Court finds this sufficient.

Mirowski's objections to Mr. Schoettelkotte's opinions fall into two categories – relevance and substance – to which the Court now turns.

## B. Relevance

In the course of analyzing the damages suffered by Mirowski as a result of the 2006 Settlement, Mr. Schoettelkotte notes Mirowski's later settlements with St. Jude in the Indiana and Delaware litigations. He opines that "the $1.9 million payment received by MFV as part of its settlement of the Indiana case with St. Jude is fair and reasonable" and "the $35.0 million that MFV received as settlement of the Delaware case is fair and reasonable and properly accommodates for the avoidance of such risk and uncertainty." Expert Rep. of Schoettelkotte at ¶¶ 14, 16, Ex. 3 to No. 214. Mirowski seeks the exclusion of these statements because they are "irrelevant to any issue in this case." Mirowski's Br. at 15, No. 214.

5

As Mirowski has explained, "[t]he question [in this case] is what the value of those two litigations was prior to the Secret Settlement (which Mirowski alleges is the breach of contract at the heart of this case) and would have been had the Secret Settlement never happened (and thus, the value of Boston Scientific's breach)." Mirowski's Br. at 15, No. 214. Dr. Rao has valued the two litigations in two ways – a damages value and a settlement value. If, as Mr. Schoettelkotte says, a total settlement of $36.9 million for the remaining claims was fair and reasonable, then this figure is may be useful in assessing Dr. Rao's valuation of a settlement of all claims, inasmuch as that figure would include the claims that remained after the 2006 Settlement. The evidence is not, therefore, "irrelevant to any issue in this case," and it is not subject to exclusion on that basis.[1]

Mirowski has two additional objections to Mr. Schoettelkotte's observations regarding these settlements. First, Mirowski argues that Mr. Schoettelkotte's observations are "unsupported" because Mr. Schoettelkotte assumes that the settlements are fair and reasonable purely on the ground that the parties actually agreed to them. This objection is properly raised on cross-examination, not a motion to exclude. Second, Mirowski contends that this evidence may mislead the jury into believing that these payments by St. Jude are payments for Boston Scientific's breach. The Court does not see the source of Mirowski's concern on this point as it can find nothing in Mr. Schoettelkotte's report to give his statement this color. Regardless, to the extent that this opinion has any ability to mislead the jury, the Court is confident that counsel for Mirowski will be able to straighten it out on cross-examination.

---

[1] However, the Court has excluded Dr. Rao's settlement value opinion, and therefore it is unclear whether Mr. Schoettelkotte's opinion will continue to be useful.

### C. Substance

Mirowski next takes issue with Mr. Schoettelkotte's appraisal of Dr. Rao's litigation and settlement damages. According to Mirowski, Mr. Schoettelkotte's only "opinion" on Dr. Rao's assessment is simply that it is "speculative," which is a legal inquiry for the Court, and one the Court resolved in its summary judgment entry. Mirowski's Br at 7, No. 214. The Court appreciates Mirowski's concern insofar as Mr. Schoettelkotte's use of the word "speculative" certainly triggers in one's mind the legal inquiry already undertaken by this Court, but what Mr. Schoettelkotte's opinion really suffers from is not so much impermissible legal opinion as inapt, overly general use of the term. As the Court reads it, Mr. Schoettelkotte uses "speculative" as a shorthand criticism of Dr. Rao's opinion in two different contexts: backward looking in the Indiana litigation, and forward looking in the Delaware litigation.[2] The former is permissible criticism; the latter is an inadmissible explanation of the obvious.[3]

Regarding Dr. Rao's analysis of the damages in the Indiana litigation, Mr. Schoettelkotte opines that "the circumstances that existed at the time Mr. Britven and Mr. Evans prepared their respective reports have changed so drastically from a damages perspective that their analysis and conclusions provide little or no value to the amount of damages, if any, that would be appropriate in this case." Expert Rep. of Schoettelkotte at ¶ 81, Ex. 3 to No. 214. In this way, Mr. Schoettelkotte criticizes Dr. Rao's opinion as speculative in the sense that it relies on reports incorporating "what might have happened" – patent claims and damages calculations that are no longer at issue – "instead of relying on what actually did." Expert Rep. of Schoettelkotte at ¶ 54,

---

[2] The distinction is made most obvious in comparing Mr. Schoettelkotte's graphs of the "assumptions" in Dr. Rao's Indiana and Delaware litigation opinions. Expert Rep. of Schoettelkotte, Figure 1 at 30 and Figure 2 at 37, Ex. 3 to No. 214.

[3] As the Court has excluded Dr. Rao's opinions on baseline royalties, settlement values, and unjust enrichment, it need not address Mr. Schoettelkotte's rebuttal opinions on these topics.

Ex. 3 to No. 214. An assessment of the propriety of relying on allegedly outdated reports is a proper and admissible subject of rebuttal expert testimony.

On the other hand, with regard to the Delaware litigation, Mr. Schoettelkotte's assessment of Dr. Rao's opinions as "speculative" simply points out that assumptions on which Dr. Rao relies – that the patent would be found valid and infringed, for example – have not yet been proved. The point Mr. Schoettelkotte makes with regard to the Delaware litigation is simply his own doubt that the predicates for Dr. Rao's opinion will occur. This principle is uncontested: in order for Dr. Rao's opinion to be useful at trial, Mirowski must prove the assumptions on which he relies. *See* Mirowski's Resp. at 18, No. 239 ("No one disputes that if a party cannot satisfy its liability burden, its damages opinions are rendered moot."). As an initial matter, Boston Scientific doesn't need an expert to point out Dr. Rao's assumptions. They are plain in Dr. Rao's report. *See, e.g.*, Expert Rep. of Rao at 43(i), Ex. 1 to No. 202. *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001) ("[A]n expert must testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury." (internal quotation marks and alterations omitted)). In this sense, Mr. Schoettelkotte's assessment of Dr. Rao's opinion is not helpful to the jury and as such it is inadmissible.

If Mr. Schoettelkotte's assessment of Dr. Rao's assumptions is not merely pointing out their existence, then he must be opining on the likelihood that they will be proved. This is problematic: first, Mr. Schoettelkotte confines the scope of his report to damages, not liability, Expert Rep. of Schoettelkotte at ¶ 2, Ex. 3 to No. 214, and as a CPA, it is not at all clear that Mr. Schoettelkotte is qualified to opine on whether a jury would find a certain way. Because he is not qualified to opine on this probability, he need not "verify his own conclusions by referencing the record and the testimony of another, non-party, witness." Boston Scientific's Resp. at 17, No.

241. In other words, there is no permissible reason for his testimony about what Peter Gafner's and James Ladner's positions were on lost profits in the Delaware case. Expert Rep. of Schoettelkotte at ¶ 94-95, Ex. 3 to No. 214.

In sum, given the different time orientation of Mr. Schoettelkotte's opinions regarding Dr. Rao, different results are necessary. Mr. Schoettelkotte's opinion regarding Dr. Rao's Indiana litigation damages is admissible; his opinion regarding Dr. Rao's Delaware litigation damages is not.[4]

Finally, Mirowski takes issue with Mr. Schoettelkotte's analysis of the availability of lost profits in the Indiana litigation. In response, Boston Scientific has indicated that it is willing to stipulate that "in the Indiana case, neither lost profits nor up-front royalty damages were *foreclosed* at the time of the 2006 Agreement." Boston Scientific's Reply at 21, No. 241. Undeterred, Mirowski continues to argue over the relevancy and import of prior rulings in the Indiana litigation on subsequent damages determinations. However, Mirowski's most basic point on this topic is also its strongest – as an accountant, Mr. Schoettelkotte is not qualified to assess the probable impact of prior rulings on future ones. Accordingly, Mirowski's motion to exclude Mr. Schoettelkotte's testimony regarding lost profits and up-front royalty damages, to the extent that it assesses these rulings' future impacts – is inadmissible.

---

[4] With respect to the Indiana Litigation, Mirowski also seeks the exclusion of Mr. Schoettelkotte's opinion on the ground that he did not do any independent valuation of the damages suffered by Mirowski from the 2006 Settlement. However, the Court sees no infirmity in an expert witness who simply opines on the propriety of another expert's opinion, without offering his own. *E.g.*, *Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.*, 829 F. Supp. 802, 834-35 (D. Minn. 2011) (collecting cases). Of course, the basis for criticism in the absence of one's own analysis may be explored on cross-examination, but it is not grounds for exclusion.

## IV.  CONCLUSION

Mirowski's motion to exclude Mr. Schoettelkotte (Dkt. No. 213) is **DENIED** as to Mr. Schoettelkotte's opinions regarding MFV's settlements with St. Jude and his criticism of Dr. Rao's Indiana litigation damages value. The motion is **GRANTED** as to Mr. Schoettelkotte's opinions regarding the Delaware litigation and his analysis of lost profits.

SO ORDERED: 02/20/2013

_____
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.