UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MIROWSKI FAMILY ) | |
| VENTURES, LLC, ) | |
| ) | |
| Counterclaim Plaintiffs, ) | |
| ) | |
| vs. ) | Cause No. 1:11-cv-736-WTL-DKL |
| ) | |
| BOSTON SCIENTIFIC ) | |
| CORPORATION, *et al.*, ) | |
| ) | |
| Counterdefendants. ) | |

## ENTRY ON MOTION IN LIMINE

This cause comes before the Court on Mirowski's Motion to Preclude Boston Scientific from Offering Opinions of Witnesses not on its Witness List (Motion in Limine #8) (Dkt. No. 294). The motion is fully briefed, and the Court, being duly advised, rules as follows on the motion.

In the instant motion, Mirowski takes issue with Boston Scientific expert witness W. Todd Schoettelkotte's reliance on the opinion of Dr. Stephen Shiboski, St. Jude's expert witness in the underlying Indiana litigation. Mirowski seeks to preclude Mr. Schoettelkotte from referencing or discussing Dr. Shiboski's opinion before the jury.

In the course of analyzing Boston Scientific's royalty obligations to MFV, Mr. Schoettelkotte opines,

> Based on my review of Mr. Lesch's report, I understand that MFV is claiming it is owed unpaid royalties and interest from BSC under the '288 Patent of approximately $82.4 million. According to Mr. Lesch, his calculation is based on the assumption that "the Court determines royalties are due on all devices and in all markets for which BSC had accrued a royalty." I disagree with Mr. Lesch's assumption and find it in direct conflict with how this Court and the CAFC has already ruled as part of the Indiana Case discussed above.

Expert Rep. of Schoettelkotte at ¶43, Ex. 1 to No. 294. In the discussion that follows, Mr. Schoettelkotte analyzes the 1973 License, the 2004 Agreement, Judge Hamilton's 2006 summary judgment ruling, and the Federal Circuit's review of that ruling before concluding that "[t]he focus of the inquiry here becomes what portion of BSC revenue was generated from the sale of ICD devices that actually performed the method of claim 4 of the '288 Patent in the United States during the term of the '288 Patent." Expert Rep. of Schoettelkotte at ¶¶44-46, Ex. 1 to No. 294. Mr. Schoettelkotte then analyzes several experts' reports in order to determine what percentage of ICD devices actually performed the method of claim 4. One of those experts is Dr. Shiboski, who opined that 10% of ICDs "received cardioversion therapy." Mr. Schoettelkotte then adopts that 10% figure in order to calculate the royalties Boston Scientific owes MFV, as it "is consistent with the opinions of Mr. Rasmussen and Drs. Shiboski, Zipes and Thisted." Expert Rep. of Schoettelkotte at ¶49, Ex. 1 to No. 294.

Mirowski point is well taken. In an argument reminiscent of its motion to preclude Mr. Schoettelkotte, Mirowski points out that Mr. Schoettelkotte is an accountant who was retained to calculate damages. The Court has already held that he is not qualified to opine on legal issues, which of course include the legal effect of the 1973 License, the 2004 Agreement, Judge Hamilton's 2006 summary judgment ruling, and the Federal Circuit's 2009 review of that ruling; as such, testimony on these subjects by Mr. Schoettelkotte is inadmissible.

Yet Boston Scientific argues that Mr. Schoettelkotte's reference to Dr. Shiboski's analysis is necessary for context: "[i]ntroducing Dr. Shiboski's percent of infringement calculation provides the jury with an understanding of where Mr. Schoettelkotte derived his assumed percentage." Boston Scientific's Resp. at 4, No. 315. However, as Mr. Schoettelkotte is not a doctor or biomedical engineer, Mr. Schoettelkotte is also not qualified to "derive" a

percentage – he lacks the basis to opine on whether Dr. Shiboski's report squares with his inadmissible opinion on the legal effect of certain rulings. The being said, Mr. Schoettelkotte may certainly assume a 10% figure in order to conduct his calculations – it would be impossible to calculate royalties without some assumed figure of the products that are covered by claim 4 – and of course he may tell the jury that he assumed a 10% rate, but Mr. Schoettelkotte is not qualified to opine why 10% is appropriate in lieu of other figures.[1] Accordingly, he may not testify as to why one expert's rate is "consistent" with his opinion.

Mirowski similarly takes issue with Dr. Zipes's analysis of another St. Jude expert in the underlying litigations, Dr. Olgin, because Dr. Zipes claims to agree with the prior testimony of Dr. Olgin, who is not listed as a potential witness in this case. In effect, Mirowski argues, Dr. Zipes serves as a mouthpiece for Dr. Olgin. In response, Boston Scientific argues that "Dr. Zipes refers to Dr. Olgin's opinions because they represent the litigation position of St. Jude from the Indiana litigation," Boston Scientific's Resp. at 6, No. 312.

The Court does not agree with Boston Scientific's characterization. Under the title, "The Experts in the *St. Jude* Indiana Action Appeared to Understand that Cardioversion Is a Shock to Treat Ventricular Tachycardia,", Dr. Zipes opines,

> 50. Consistent with my understanding that cardioversion treats VT, technical experts in the *St. Jude* Indiana Action who opined on cardioversion appeared to understand the term to have the same meaning, and did not opine that defibrillation is a type of cardioversion. For example, Dr. Berger (expert for both Guidant and MFV) opined that based on his own programming preferences, "cardioversion refers to the application of a shock, usually on the order of 1 to 5 joules, used to treat ventricular tachycardia." (Berger Rpt., Ex. 20 at 18.) Likewise, Dr. Berger agrees with my understanding of the above-described treatments as he also believes that a cardioversion shock treats VT, rather than

---

[1] Boston Scientific also argues that "as to the 'reasonable settlement value' damages theory that Mirowski asserts, Mr. Schoettelkotte's reference to Shiboski's report informs the jury what the parties' relevant litigation positions were," but Mr. Schoettelkotte does not discuss Dr. Shiboski's report in this context.

3

> fibrillation. (*Id.*) Similarly, Dr. Olgin (expert for St. Jude) opined that
> "'[d]efibrillation' is generally used to refer to conversion of fibrillation;
> 'cardioversion' is generally used to refer to conversion of tachycardia." (Olgin
> Rpt., Ex. 21 at 9.)
>
> 51. Thus, contrary to MFV's experts' incorrect assumption that defibrillation is a
> type of cardioversion used to treat the same types of arrhythmias (Strobel Rpt. at
> 4; Strickberger Rpt. at 4, 10-11), Dr. Olgin, Dr. Berger, and I have the same
> understanding of cardioversion. That is, cardioversion is a relatively low-energy
> shock used to treat VT, not VF, and cardioversion does not include defibrillation
> in its definition.

Expert Rep. of Zipes at ¶¶ 50-51, Ex. 2 to No. 294. While it is true that Dr. Zipes acknowledges that Dr. Olgin was an expert in the underlying litigation, that is not *why* he cites Dr. Olgin's report. He cites Dr. Olgin's report to show that another expert agrees with his opinion. As such, he does not rely on Dr. Olgin's report in conducting his own analysis, as permitted by Rule 703, nor does he discuss the effect of Dr. Olgin's report on settlement valuations (the theory strongly implied by Boston Scientific's argument), an inquiry for which he is unqualified given that he is a cardiologist. Dr. Zipes cites Dr. Olgin *because* Dr. Olgin's opinion is consistent with his. As such, he becomes a conduit for hearsay testimony. If permitted to testify to the consistency between his and Dr. Olgin's analyses, Dr. Zipes would inject Dr. Olgin's opinion into this case, but she has not been disclosed as an expert and Mirowski will not be able to cross-examine her. *See Hutchinson v. Groskin*, 927 F.2d 722 (2nd Cir. 1991)(holding that it was clear error to admit testifying expert's testimony that his opinion was consistent with the opinion of three non-testifying experts, as outlined in letters to counsel). This sort of bolstering is inadmissible.

This is not, however, the only context in which Dr. Zipes discusses Dr. Olgin's report. Elsewhere in his report, Dr. Zipes explains:

> Based on his analysis, Dr. Thisted concluded that the number of devices that
> actually performed cardioversion in those studies ranged from 4 to 10% [sic] Due
> to the lack of availability of information, Dr. Thisted was not able to perform a
> Kaplan-Meier analysis on the data to determine the effect on the percentage of

4

> devices performing cardioversion as a matter of time. Nonetheless, I have reviewed the analysis of the data in Dr. Olgin's report and found the Kaplan-Meier analysis did not appreciably change the number of St. Jude devices that performed cardioversion. (*See* Olgin Rpt., Ex. 21 at 13-14.) And I have reviewed testimony that the percentage of St. Jude devices that performed cardioversion would not be appreciably different from the percentage of Guidant devices that performed cardioversion (*See* Olgin Rpt., Ex. 21 at 18; Rasmussen Dep. Tr., Ex. 19 at 198:9-12).

Expert Rep. of Zipes at ¶¶ 64, Ex. 2 to No. 294. Assuming for the moment that Dr. Zipes is qualified to perform a Kaplan-Meier analysis,[2] his assessment of Dr. Olgin's Kaplan-Meier analysis is impermissibly opaque, as he adopts her opinion wholesale without any analysis. As there is no evidence of Dr. Zipes's own analyses of the data, Dr. Zipes again becomes a mouthpiece for Dr. Olgin. Such testimony is inadmissible.

To the extent set forth above, Mirowski's motion is **GRANTED**.

SO ORDERED:  02/20/2013

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

---

[2] Kaplan-Meier is a statistical measure. Dr. Zipes is an electrophysiologist, a sub-specialist within cardiology. Expert Rep. of Zipes at ¶ 1, Ex. 11 to No. 207.

5