UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MIROWSKI FAMILY VENTURES, LLC, | ) ) ) |
| Counterclaimant, | ) ) ) |
| vs. | )  Cause No. 1:11-cv-736-WTL-DKL ) |
| BOSTON SCIENTIFIC CORPORATION, *et al.*, | ) ) ) ) |
| Counterclaim Defendants. | ) |

## ENTRY DISMISSING CASE FOR LACK OF JURISDICTION

As the parties and the Court were gearing up for the trial scheduled in this case, the United States Supreme Court handed down *Gunn v. Minton*, 133 S.Ct. 1059 (2013). In a letter dated February 21, 2013, Boston Scientific brought the decision to the Court's attention and suggested that, pursuant to its holding, the Court lacked subject matter jurisdiction over this case. The following day, Mirowski responded that it believed federal question jurisdiction existed and urged the Court to hold fast to the trial date.[1]

After reviewing the parties' letters and conducting its own preliminary review, the Court concluded that there was a genuine dispute as to its subject matter jurisdiction over this case. Accordingly, the Court vacated the trial and ordered formal briefing on the subject. After reviewing the parties' briefs, the Court ordered additional briefing. That briefing is now complete and the Court, being duly advised, rules as follows.[2]

---

[1] The parties letters have been docketed as Docket Nos. 409-1 and 409-2.

[2] Because the Court does not believe that oral argument would aid it in its decision, Mirowski's motion for oral argument (Dkt. No. 411) is **DENIED**. *See* Local Rule 7-5(d)(1)(vesting decision to permit oral argument in sole discretion of the Court).

## I. BACKGROUND

This case has its genesis in an exclusive license agreement entered into in 1973 ("License Agreement") between the owner of several patents (hereinafter referred to as "Mirowski") relating to implantable cardioverter defibrillators ("ICDs") and a company (hereinafter referred to as "Boston Scientific")[3] that wished to sell ICDs. The License Agreement required Boston Scientific to pay Mirowski, among other things: "Three percent (3%) of the net sales, rental and lease by [Boston Scientific] of Implantable Defibrillators, their parts and components covered under patent rights." In addition, the License Agreement gave Boston Scientific the right to bring infringement suits against others in its name, and further provided that Boston Scientific "shall have the obligation, subject to mutual agreement between [Boston Scientific and Mirowski] to bring and conduct suit or actions against any infringer whose annual sales, rentals and leases of infringing devices exceed $75,000." Mirowski, in turn, agreed to join as a party plaintiff in any infringement suit brought by Boston Scientific under the terms of the License Agreement, and the agreement provided that Mirowski had the right to participate in any such suit. The proceeds of any successful infringement suit, less all costs and expenses incurred by Boston Scientific, were to be divided equally between Boston Scientific and Mirowski.

One such suit (hereinafter referred to as the "Indiana Litigation") was filed in the Southern District of Indiana in 1996 against St. Jude Medical, Inc., ("St. Jude") alleging

---

[3]In the forty years since the License Agreement was executed, the parties to the agreement have had various successors. For the sake of simplicity, the Court will refer to them in their current iterations—Mirowski Family Ventures, LLC ("Mirowski") is now the owner of the patents at issue in this case and Boston Scientific Corporation ("Boston Scientific") is the successor to the original licensee. Similarly, over the years additional patents—including the '288 patent relevant to the issue now before the Court—were issued to Mirowski and, by agreement of the parties, also covered by the License Agreement.

2

infringement of two patents, hereinafter referred to as the '288 patent and the '472 patent. In 2001, a jury found that St. Jude infringed the '472 patent and jointly awarded Boston Scientific and Mirowski $140 million in damages, including a $110 million up-front payment for entry into the ICD market and ongoing royalties of $30 million. The jury did not award lost profits with regard to the '472 patent. In addition, the jury found no infringement of the two claims of the '288 patent at issue.

In February 13, 2002, the district court entered judgment as a matter of law for St. Jude on both patents and conditionally granted a new trial for St. Jude as to most issues on which it did not prevail at trial. Among other things, the court found the '288 and '472 patents invalid, found the '472 patent not infringed, ordered Boston Scientific to pay St. Jude a sanction of $300,000 for misconduct related to one of Boston Scientific's expert witnesses, and ordered Boston Scientific to pay St. Jude's costs, including attorneys' fees, if a retrial became necessary.

Following this ruling, in April 2002, Boston Scientific advised Mirowski that it was ceasing payment of royalties to Mirowski, citing a provision of the License Agreement that provided that royalties were "payable only on devices which are covered . . . by one or more valid claims of a patent application or of an unexpired patent included in the Patent Rights." Because the relevant claims of the '288 patent had been declared invalid by the district court in the Indiana Litigation, Boston Scientific took the position that it was no longer required to pay royalties. Mirowski disagreed with Boston Scientific's interpretation of the License Agreement, taking the position that royalty payments were still required.

The '288 patent expired in December 2003.

In January 2004, Boston Scientific and Mirowski entered into a two-page agreement (the "2004 Agreement") to resolve their dispute regarding royalties. The 2004 Agreement provided, in relevant part:

> In the event there is in the [Indiana] Litigation a final non-appealable judgment that St. Jude infringes a valid claim of the '288 Patent and that the '288 Patent is properly subject to the previously granted patent term extension, [Boston Scientific] will pay to MIROWSKI a sum equal to all royalties that accrued pursuant to the License Agreement on products covered by any such claims of the '288 Patent from the date such royalty payments were suspended to the date of expiration of the '288 Patent together with interest at the prime rate as published in the Wall Street Journal as compounded quarterly from the date payment is due to the date of payment. Such payment will be made by Boston Scientific within ninety (90) days after such decision becomes final and not subject to further appeal.
>
> ***
>
> In the event that there is in the [Indiana] Litigation a final non-appealable judgment that St. Jude does not infringe the '288 Patent (whether by non-infringement or because an invalid claim cannot be infringed), Boston Scientific will pay to MIROWSKI fifteen million dollars ($15,000,000) within ninety (90) days after such decision becomes final and not subject to further appeal.

The 2004 Agreement further provided that Mirowski released Boston Scientific "from any and all causes of action, claims and demands whatsoever in law or in equity that any Mirowski Party has, had or may have against [Boston Scientific], based on or arising from the [Indiana Litigation] or from any non-payment of royalties under patents in the [Indiana Litigation]."

In the meantime, Mirowski and Boston Scientific had appealed the district court's invalidity decision with regard to claim 4 of the '288 patent, which was a method claim. The Federal Circuit Court of Appeals ("Federal Circuit") ultimately reversed the district court's finding that the '288 patent was invalid and remanded for a determination of damages. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348 (Fed. Cir. 2009); *cert. denied*, 558 U.S. 1115 (2010).

While the appeal was pending before the Federal Circuit, in July 2006, Boston Scientific and St. Jude entered into a settlement agreement ("St. Jude Agreement") that fully resolved four cases that were pending between the two companies and partially resolved two others, including the Indiana Litigation and a case pending in Delaware involving another Mirowski patent ("the Delaware Litigation"). With regard to the Indiana Litigation, Boston Scientific agreed to withdraw its damages claim for, among other things, lost profits, price erosion, an "up-front" royalty payment, prejudgment interest, and attorneys' fees. With regard to the Delaware Litigation, Boston Scientific withdrew its damages claim for, among other things, lost profits, price erosion, an "up-front" royalty payment, enhanced damages (i.e., treble damages and/or attorneys' fees) and prejudgment interest. Mirowski subsequently agreed to the terms of the agreement between Boston Scientific and St. Jude with regard to the Indiana Litigation. However, Mirowski and Boston Scientific entered into a reservation of rights agreement preserving Mirowski's claims against Boston Scientific for breach of contract and/or breach of the 2004 Agreement relating to the St. Jude Agreement.

After the Supreme Court declined to review the Federal Circuit's ruling, Boston Scientific, Mirowski, and St. Jude entered into a stipulation of dismissal of the Indiana Litigation and the case was closed by the district court on May 5, 2010.

Thereafter, Boston Scientific paid Mirowski approximately $6.6 million, asserting that, under the applicable provision of the 2004 Agreement, it owed Mirowski royalties on only 10% of its United States sales during the time period covered by the Agreement because only 10% of the devices it sold practiced the method of claim 4 in the United States and thus were covered by the '288 patent. Mirowski objected, contending that Boston Scientific's payments did not satisfy its obligation under the 2004 Agreement.

On May 31, 2011, Boston Scientific filed its "Complaint for Declaratory Judgment" seeking declaratory judgments that (1) "its ICD products that [did] not perform cardioversion therapy [did] not infringe the '288 patent'" (2) the payments it had made to Mirowski "satisfied its royalty obligations under the [License Agreement]" and therefore it owed no additional royalties to Mirowski; and (3) it did not breach any contractual or fiduciary obligations by entering into the St. Jude Agreement. Complaint at ¶¶ 38, 41, 44.

## II. DISCUSSION

The issue before the Court is whether it has subject matter jurisdiction over this case. Because diversity of citizenship is not present, [4] jurisdiction lies only if this case arises under federal law. A case may arise under federal law in two ways. "Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Gunn*, 133 S.Ct. at 1064. In addition, the Supreme Court has recognized a "special and small category of cases" in which "arising under" jurisdiction lies even though the case involves only claims based on state law. *Id.* Mirowski argues that both of these grounds for federal jurisdiction are present in this case.

### A. Could Mirowski Have Asserted a Colorable Claim for Patent Infringement?

Federal district courts have exclusive jurisdiction over "any civil action arising under any Act of Congress relating to patents," 28 U.S.C. § 1338(a), and Boston Scientific seeks a declaration that it does not infringe the '288 patent in its complaint. However,

---

[4] Boston Scientific alleged in its complaint that this Court had both federal question jurisdiction and diversity jurisdiction over this case. In its answer, Mirowski agreed with the former assertion but disputed the latter, asserting, without elaboration, that the Guidant Plaintiffs and Mirowski were not citizens of different states. In fact, as the parties have now confirmed in supplemental jurisdictional statements ordered by the Court, Mirowski is a citizen of Indiana, Pennsylvania, and Massachusetts, and three of the four Plaintiffs also are citizens of Massachusetts. Accordingly, the parties agree, as they must, that complete diversity does not exist.

6

> [t]o decide whether a declaratory-judgment action comes within federal jurisdiction, a court must dig below the surface of the complaint and look at the underlying controversy. If a well-pleaded complaint by the defendant (the "natural" plaintiff) would have arisen under federal law, then the court has jurisdiction when the "natural" defendant brings a declaratory-judgment suit.

*NewPage Wis. Sys. Inc. v. United Steel Workers Int'l Union*, 651 F.3d 775, 777-78 (7th Cir. 2011). This is often referred to as the "mirror-image" approach. Importantly, the question is not what claims the natural plaintiff *would* have brought had it filed suit first, but rather what claims the natural plaintiff *could* have brought. *See, e.g.*, Household Bank v. JFS Grp., 320 F.3d 1249 (11th Cir. 2003) (fact that natural plaintiffs contended that they did not intend to bring a federal claim did not divest court of subject matter jurisdiction).

Mirowski has not asserted a claim for patent infringement against Boston Scientific, but argues that it could have. If this were true, this Court's jurisdiction over this case would be secure. Unfortunately, it is not.

Patent infringement is defined in 35 U.S.C. § 271(a) as making, using, selling, or offering to sell any patented invention "without authority." The License Agreement authorized Boston Scientific to make, sell, etc., ICDs covered by the '288 patent. Therefore, as long as the License Agreement was in place, any such sales by Boston Scientific could not, as a matter of law, constitute infringement of the '288 patent. *See*, *e.g.*, *Milprint, Inc. v. Curwood, Inc.*, 562 F.2d 418, 420 (7th Cir. 1977) ("[T]he existence of a license precludes the possibility of infringement."); *Arvin Indus., Inc. v. Berns Air King Corp.*, 510 F.2d 1070 (7th Cir. 1975) (same); *United Mfg. & Serv. Co. v. Holwin Corp.*, 187 F.2d 902, 905 (7th Cir. 1951) ("It is also clear that while the license agreement is still in effect the owner of the patent cannot sue for infringement. He is limited to the enforcement of his rights and remedies under the license agreement."); *Metabolite Labs., Inc. v. Laboratory Corp. of Am.*, 904 F. Supp.2d 1137, 1140 (D.

7

Colo. 2006) ("[A] licensee cannot infringe."); *Intel Corp. v. Broadcom Corp.*, 173 F. Supp.2d 201, 228 (D. Del. 2001) (patent license is essentially a waiver of patent owner's right to sue licensee for infringement). This is hardly a new concept; almost a century ago the United States Supreme Court, in finding no federal question jurisdiction existed in a claim for breach of a patent license, noted: "Infringement of the patent is not alleged, but, on the contrary, a completed grant and assignment of legal title to it is pleaded, sufficient on its face, while unmodified, to disable the plaintiff from maintaining a suit for any infringement subsequent to the date of such assignment." *Odell v. F.C. Farnsworth Co.,* 250 U.S. 501, 503 (1919).

Mirowski argues that it nonetheless could have maintained a suit for infringement against Boston Scientific because it could have chosen to "set[ ] aside the January 28, 2004, Agreement and treat Boston Scientific as an infringer rather than as a contractual partner." Mirowski Brief at 9 (Dkt. No. 410). The problem with this argument is that it ignores the fact that in order to treat Boston Scientific as an infringer, Mirowski would have had to have terminated the License Agreement *prior to the time the ICD sales at issue were made*.[5] Mirowski did not. Again,

---

[5] In its supplemental submission, Mirowski shifts gears a bit, arguing that because the License Agreement applied only to ICD sales covered by a valid patent claim, the district court's ruling of invalidity in the Indiana Litigation meant that the ICD sales at issue in this case were not covered by the license; as to those sales, Mirowski argues, Boston Scientific therefore was not a licensee but rather—as soon as the Federal Circuit reversed the invalidity ruling—an infringer. If Mirowski's argument were correct, any licensee—even one who continued to pay royalties—would lose the protection of its license and become a potential infringer during the pendency of the appeal of a ruling of invalidity. To the contrary, while the issue of whether royalties will ultimately be owed pursuant to a license agreement may be up in the air while a case makes its way through the appellate process, that does not render the license agreement itself a nullity. *See Go Medical Indus. Pty., Ltd. v. Inmed Corp.*, 471 F.3d 1264, 1273 (Fed. Cir. 2006) (district court ruling that patent was invalid "had no effect on the contractual relationship" between patent holder and licensee; "the license did not automatically terminate with the district court's ruling . . . because the invalidity finding was still pending appeal" and thus royalties would be owed if ruling was reversed). Mirowski's suggestion that the execution of the 2004 Agreement somehow retroactively removed the licensee status enjoyed by Boston Scientific in 2002 and 2003 is similarly unavailing. The 2004 Agreement simply altered Boston Scientific's

8

because the License Agreement was not terminated prior to the expiration of the patent, each ICD sale at issue was authorized by the License Agreement and could not have constituted infringement of the '288 patent.

On this point, *Dow Chem. Co. v. United States,* 226 F.3d 1334 (Fed. Cir. 2000), is instructive. The facts set forth in that opinion indicate that the United States and Dow Chemical Company ("Dow") negotiated a license agreement in 1972 regarding a patent owned by Dow that related to a method of filling abandoned mines to prevent the collapse of the overlying land. In 1975, after the United States had completed various mine backfilling projects, Dow sought an accounting of royalties due under the license. The United States took the position that no royalties were due because it had not practiced the invention covered by Dow's patent. The dispute between the parties continued for several years, with the United States refusing to pay royalties and Dow asking it to reconsider its position. Finally, in 1983, Dow sued the United States, seeking a reasonable royalty for the infringement of its patent or, in the alternative, seeking damages for the United States' breach of the license agreement. Two years later, "Dow notified the government that it was terminating the license, effective as of the date of the breach of the contract or the date of the notice, whichever was legally earlier, because the government had failed to pay royalties." *Id.* at 1337.

The district court found that the patent was valid and was infringed by the United States. It then held that the United States' refusal to pay any royalties under the license agreement rendered that agreement void *ab initio*; accordingly, it awarded damages on the basis of unlicensed infringement, rather than breach of contract. On appeal, the Federal Circuit, noting

---

obligation to pay Mirowski for its activities during that time period; it did not transform those activities from authorized to infringing. Neither did Boston Scientific's alleged failure to own up to its payment obligations; again, that failure (to the extent it occurred) constituted a breach of the 2004 Agreement, but it did not retroactively strip Boston Scientific of its licensee status.

9

that "[r]epudiation occurs when one party refuses to perform and communicates that refusal distinctly and unqualifiedly to the other party," found that the United States had repudiated (that is, materially breached) the license in 1978 when it "clearly and unequivocally expressed its intention to never pay royalties." *Id.* at 1345. However, the court disagreed that the repudiation by the United States rendered the license agreement void *ab initio*. Rather, when one party repudiates a contract, "[t]he injured party can choose between terminating the contract or continuing it." *Id.* at 1344 (citing *St. Paul Plow-Works v. Starling*, 140 U.S. 184 (1891); *McDonnell Douglas Corp. v. United States*, 182 F.3d 1319, 1327 (Fed. Cir. 1999); *Cities Service Helex, Inc. v. United States*, 543 F.2d 1306, 1313 (Ct. Cl. 1976)). Dow chose to continue the contract until, during the pendency of the lawsuit, it decided to terminate the license. Prior to the date of termination, the United States was liable for breach of contract for failing to pay royalties due under the license agreement; after the date of termination, any use of Dow's invention constituted infringement by the United States. *Id.* at 1348.

As *Dow* demonstrates, Mirowski's suggestion that Boston Scientific's alleged material breach of the contract in April 2002—when it stopped making royalty payments because the '288 patent had been found invalid in the Indiana Litigation—transformed Boston Scientific from a licensee to an infringer is incorrect. Only Mirowski's termination of the License Agreement could do that, and there was no such termination at any time prior to the expiration of the '288 patent.

In light of this fact, had Mirowski chosen to assert a claim for infringement against Boston Scientific that claim would have been frivolous and therefore would not have supplied a basis for federal question jurisdiction. *See Carr v. Tillery*, 591 F.3d 909, 917 (7th Cir. 2010) ("A suit that is utterly frivolous does not engage the jurisdiction of the federal courts."); *see also*

*Steel Co. v. Citizens for a Better Eviron.*, 523 U.S. 83, 89 (1998) ("Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.") (citations omitted). Mirowski is correct that "the defense of a license . . . does not abrogate the existence of federal question jurisdiction as established in the plaintiff's complaint." Mirowski's Brief, Dkt. No. 410, at 10 (citing *Pixton v. B&B Plastics, Inc.*, 291 F.3d 1324, 1327 (Fed Cir. 2002) ("[T]his is an action for patent infringement in which the defendant has asserted the defense of a license. Jurisdiction in the federal courts is not lost simply because the most efficient approach at trial may be to address the license defense first.")).  However, that uncontroversial statement of law begs the critical question, which is whether the plaintiff's complaint stated a colorable federal claim to begin with.  In *Pixton*, for example, the plaintiff alleged that it had terminated the license agreement; if that factual allegation were proven, *Pixton* would have had a viable infringement claim.  Here, on the other hand, the fact is that the License Agreement was not terminated; therefore, even if Mirowski had asserted an infringement claim against Boston Scientific, that claim would not have invoked federal jurisdiction because it would have been "wholly imaginary."  *See Arvin Indus.*, 510 F.2d at 1073 ("Plaintiff does not have 'pleader's choice' . . . to sue for violation of its federal patent rights which its own complaint shows did not occur" because the sales in question were authorized by a license agreement that had not been terminated.).

     For the reasons set forth above, the Court determines that Mirowski could not have asserted a colorable claim for infringement of the '288 patent against Boston Scientific. Accordingly, this case is not one in which federal law creates the cause of action asserted.

### B. Does This Case Fall into the "Special and Small Category of Cases" Recognized by the Supreme Court?

As noted above, the Supreme Court has recognized that there are cases in which "arising under" jurisdiction lies even though the case involves only claims based on state law. *Gunn*, 133 S.Ct. at 1064. The Supreme Court has set forth the following inquiry to be used to determine whether a particular case falls into what it has described as a "special and small category of cases":

> Does the "state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities"? That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met, we held, jurisdiction is proper because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum," which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.

*Gunn*, 133 S.Ct. at 1065 (quoting *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 313-14 (2005)).

This case clearly satisfies the first and second *Gunn* requirements. A patent issue—which of the ICDs sold by Boston Scientific were "covered by" claim 4 of the '288 patent—has been necessarily raised and actually disputed from the initiation of this suit. However, this case fails to satisfy the third prong; it does not involve a federal issue that is "substantial" as that term must be read in light of *Gunn*.

There is no doubt, as Mirowski argues, that "[t]he scope of patent claims is one of the most important and central issues in patent litigation." Mirowski Brief at 13 (Dkt. No. 410). There is also no doubt that *U.S. Valves, Inc. v. Dray*, 190 F.3d 811 (7th Cir. 1999), upon which Mirowski primarily relies, and other pre-*Gunn* cases support a finding of federal jurisdiction in

this case. The court in *Dray* applied the following standard for determining whether federal jurisdiction existed in a case involving a patent license dispute:

> Patent law jurisdiction "extends only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, *in that patent law is a necessary element of one of the well-pleaded claims*."

*Id.* at 813 (emphasis added) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988)). Therefore, the court held:

> Whether Dray breached the exclusivity provision of the license agreement depends on whether he sold valves which infringed on the licensed patents. The only way to tell whether a valve is covered by the licensed patents is to apply substantive patent law. Moreover, the only means by which to fix damages is to evaluate each valve sold, and determine whether that valve is an infringing valve. . . . [W]hether a breach occurred depends on whether Dray infringed the licensed patents, and this issue requires the application of the federal patent laws. Thus, patent law is a necessary element of U.S. Valves' counterclaim, and the appeal should be transferred to the Federal Circuit.

*Id.* at 814 (citations and internal quotation marks omitted). As *Gunn* makes abundantly clear, however, the fact that an issue of patent law will have to be resolved in order to resolve a case is *necessary* to confer federal jurisdiction over the case—it is the second *Gunn* requirement—but it is not *sufficient* to confer federal jurisdiction, because it is not sufficient to satisfy the third *Gunn* requirement, which "looks instead to the importance of the [patent] issue to the federal system as a whole." *Gunn,* 133 S.Ct. at 1066.

*Gunn* was a legal malpractice case arising out of litigation in which a patent owned by Minton was declared invalid. Minton sued his lawyers, arguing that their failure to make a particular argument constituted malpractice. The resolution of the malpractice claim hinged on an issue of patent law—whether the omitted argument would have been successful and therefore would have avoided the invalidity ruling. The Supreme Court held that the resolution of the

patent issues by the state court in that case did not carry the requisite importance to the federal system as a whole:

> Because of the backward-looking nature of a legal malpractice claim, the question is posed in a merely hypothetical sense: If Minton's lawyers had raised a timely experimental-use argument, would the result in the patent infringement proceeding have been different? No matter how the state courts resolve that hypothetical "case within a case," it will not change the real-world result of the prior federal patent litigation. Minton's patent will remain invalid.

*Id.* at 1067.

This case, too, can only be characterized as "backward-looking." The '288 patent expired long before this case was filed. The patent issue in this case with regard to the '288 patent is to what extent Mirowski hypothetically could have enjoined Boston Scientific from selling ICDs if it had not entered into the License Agreement (or if it had terminated the License Agreement at some point prior to the expiration of the patent). Because there can be no covered sales going forward—in light of the expiration of the patent—any ruling in this case cannot have any effect on any future events; it can only resolve Boston Scientific's obligations for events that occurred in the past.

That these circumstances dictate a finding of no federal jurisdiction under the test as clarified in *Gunn* is made clear by the Federal Circuit's application of *Gunn* in *Forrester Environmental Servs. v. Wheelabrator Techs., Inc.*, 715 F.3d 1329 (Fed. Cir. 2013). In that case, the plaintiff alleged that the defendant had falsely told a Taiwanese company ("Kobin") that the plaintiff's product that Kobin was using in Taiwan was covered by a patent owned by the defendant, causing Kobin to terminate its business with the plaintiff. The resolution of that claim "necessarily require[d] the trial court to construe the claims of the [defendant's] patent in order to determine whether the alleged statements were, indeed, false." *Id.* at 1334. The court recognized that "[i]n the past, we have concluded that similar state law claims premised on

14

allegedly false statements about patents raised a substantial question of federal patent law." *Id.* In *Forrester*, however, there was no prospect of inconsistent judgments between state and federal courts with regard to the construction of the patent claims because "[t]he use of a patented process outside the United States is not an act of patent infringement" and all of Kobin's alleged activities occurred in Taiwan.

> Therefore, there [was] no prospect of a future U.S. infringement suit arising out of Kobin's use of [either the plaintiff's product or the defendant's product] in Taiwan and accordingly no prospect of inconsistent judgments between state and federal courts. Moreover, the [relevant] patents have all now expired, so there is also no prospect that future conduct in the U.S. could lead to an infringement suit regarding those patents. Here, as in *Gunn*, the potential conflict is purely "hypothetical."

*Id.* Accordingly, the patent issues in the case were not "substantial in the relevant sense" under *Gunn*, and federal jurisdiction was absent.

The same is true in this case. This case is backward-looking, and the parties point to no patent issue necessarily raised by this case that could have any effect beyond the parties to this case. The Court also is unaware of any such issue. In its absence, this Court cannot exercise jurisdiction over this case.

### III. CONCLUSION

For the reasons set forth above, this case must be, and hereby is, **DISMISSED** for lack of subject matter jurisdiction.

SO ORDERED:  07/29/2013

*[signature]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification